# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

––––––––––––––

No. 01-6005MN

––––––––––––––

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Frank Funaro, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Mark C. Halverson, | * | Appeal from the United States |
| Chapter 7 Trustee, | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Frank M. Funaro, | * | |
| | * | |
| Defendant-Appellee. | * | |

––––––––––––––

Submitted: May 2, 2001
Filed: July 2, 2001

––––––––––––––

Before WILLIAM A. HILL, SCHERMER, and FEDERMAN,[1] Bankruptcy Judges.

––––––––––––––

FEDERMAN, Bankruptcy Judge.

      The Chapter 7 Trustee (the Trustee) appeals from a bankruptcy court judgment in favor of defendant Frank Funaro (Funaro) in a fraudulent conveyance cause of action and from a bankruptcy court order awarding sanctions to Funaro in the amount of $3,970.00. For the

––––––––––––––––––––––––––––––

      [1]The Honorable Arthur B. Federman, Chief United States Bankruptcy Judge for the Western District of Missouri, sitting by designation.

following reasons, we affirm the decision of the bankruptcy court as to the judgment in favor of Funaro, and reverse the order awarding sanctions.

## I
## ISSUES PRESENTED

1. In 1985 Funaro assigned Frank Funaro, Inc., a Subchapter S corporation (the Corporation), his right to receive certain insurance commissions. On August 27, 1997, Funaro filed a Chapter 13 bankruptcy petition. After the filing, he caused the Corporation to assign back to him the right to receive those same insurance commissions. On April 6, 1998, he filed a Chapter 7 bankruptcy petition on behalf of the Corporation. The Trustee for the Corporation filed an avoidance action against Funaro to recover what he alleged were the Corporation's right to commissions, since that right was transferred to Funaro within a year of the Chapter 7 filing. The Bankruptcy Code (the Code) provides that a transfer of property of the estate within a year of filing a bankruptcy petition without adequate consideration, or with an intent to hinder, delay, or defraud creditors, is fraudulent and avoidable. Did the Trustee prove that the Corporation had the right to receive insurance commissions and that the assignment to Funaro of that right was a fraudulent transfer?

2. The bankruptcy court denied Funaro's oral motion for summary judgment at a summary judgment hearing. The bankruptcy court then imposed sanctions against the Trustee at trial for filing a lawsuit that was wholly without merit and frivolous. Can a lawsuit that survives a summary judgment motion be wholly without merit, frivolous, and subject to sanctions?

## II
## DECISION

1. The Trustee failed to prove that the Corporation had a property interest in the insurance commissions, or, if the Corporation had such a property interest, the amount of commissions reassigned subject to that property interest. As such, the Trustee did not sustain his burden of proof as to whether a fraudulent conveyance took place. The bankruptcy court was, thus, correct in finding in favor of Funaro.

2

2. The fact that the Trustee failed to sustain his burden of proof in this fraudulent conveyance action does not mean that the action was frivolous. Indeed, this cause of action survived a motion for summary judgment, which means that the bankruptcy court found that there was a genuine issue of material fact to be decided at trial. Since there was a genuine issue of material fact, the bankruptcy court erred in finding that the Complaint was wholly without merit and frivolous.

III

For over 20 years Funaro has sold insurance for various insurance companies. On July 30, 1985, Funaro formed the Corporation. He was the sole shareholder. Beginning in 1985, Funaro assigned to the Corporation all of his right, title, and interest in certain insurance commissions. There is no evidence that the corporation itself entered into any contracts with the insurance companies, though there is a reference in the record to some three contracts that Funaro negotiated with insurance companies in the name of the Corporation.[2] The Corporation incurred the expenses associated with running an office. In addition, the Corporation incurred other liabilities.

In 1997 both Funaro and the Corporation began to experience financial problems. As a result, on August 27, 1997, Funaro and his wife filed a Chapter 13 bankruptcy petition. In order to fund his Chapter 13 plan, Funaro caused the commissions previously assigned to the Corporation to be reassigned to him. Then, on April 6, 1998, after one of the Corporation's creditors began collection proceedings, Funaro, on behalf of the Corporation, filed a Chapter 7 bankruptcy petition.

At the time of filing, the Corporation owed Norwest Bank the sum of $68,855.98 and Advanta Business Cards the sum of $1,000.00. Funaro personally guaranteed the obligation to Norwest Bank in the amount of $33,746.00, and he listed that amount as an obligation in the Chapter 13 schedules in his personal case. Funaro's Chapter 13 plan, however, does not

_____

[2]See Appellant's Brief and Appendix, Ex. ## A165 (Continental General Insurance Company) and A167 (Mutual Protective Insurance Company and Medico Life Insurance Company).

3

provide for any payment to Norwest Bank for the unguaranteed portion of its debt. After payment of expenses, including his salary in the amount of $45,000.00 per annum, Funaro, as President of the Corporation, caused all other corporate revenues to be paid to him as dividends.

On December 9, 1999, the Trustee filed a motion for relief from the automatic stay in Funaro's Chapter 13 case in order to pursue a fraudulent conveyance cause of action. Funaro's counsel objected to the relief from stay, arguing that the Corporation had no property interest in the renewal commissions, and that, therefore, no transfer took place. The bankruptcy court, nonetheless, on January 12, 2000, granted the Trustee relief from the stay to pursue this cause of action. On January 28, 2000., the Trustee filed the Complaint. At trial, however, the Trustee failed to produce any contracts between the Corporation and the insurance companies or any evidence of the value of the renewal commissions received pursuant to those contracts.

In response to interrogatories from the Trustee, Funaro admitted that he discarded all commission statements and documents related to the assignments, and kept only tax-related records. He also stated that the commission statements did not separate earnings into categories such as first-year business, overwrites, and renewals. The Trustee claims that the absence of adequate business records impeded the development of his case in this litigation.

On July 12, 2000, the Trustee filed a motion for summary judgment in the adversary proceeding. On August 28, 2000, the bankruptcy court held a hearing on the Trustee's motion for summary judgment. At the conclusion of that hearing, counsel for Funaro orally cross-motioned for summary judgment. The bankruptcy court denied both motions.

On September 13, 2000, Funaro sent to the Trustee a a "Notice of Intent to Seek Rule 11 Sanctions" for the "commencement of bad faith litigation," unless the Trustee promptly dismissed his Complaint.[3] While the parties do not dispute that the Trustee received this Notice, Funaro never filed with the bankruptcy court a formal motion for sanctions.

---

[3]Appellee's Appendix, RA-48.

4

On January 8, 2001, the bankruptcy court held a trial on the alleged fraudulent or preferential transfers. At the hearing the bankruptcy court announced its findings in favor of Funaro, and also announced its intention to award Funaro sanctions in the amount of $3,970.00, based on an affidavit of attorney's fees and expenses submitted by Funaro's counsel. Noting, however, that a party cannot prove the amount of Rule 11 sanctions by affidavit, the court granted the Trustee 24 hours in which to request an evidentiary hearing if he wished to challenge the value of the services referenced in the affidavit of counsel.[4] The court also warned the Trustee that an evidentiary hearing could result in an increase in the amount of the sanction.[5] The Trustee immediately informed the court that he would not require an evidentiary hearing, and on January 10, 2001, the court entered judgment. On that same date, however, the Trustee wrote a letter to the court stating that he had reviewed Rule 9011(c) of the Federal Rules of Bankruptcy Procedure (the Rules), and that he felt the imposition of sanctions did not conform to the requirements of the Rule. He, therefore, asked for the opportunity to respond to a motion or an Order to Show Cause, and that he be allowed a reasonable time within which to prepare that response. Apparently, the court's Order of Judgment and the Trustee's letter crossed in the mail. The court never responded to the letter, and the Trustee did not file a motion for reconsideration. Instead, he filed this appeal. Funaro has now filed a motion for sanctions for filing a frivolous appeal. Based upon the following discussion, that motion will be denied.

IV

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness.[6] We review the legal conclusions of the bankruptcy court de novo.[7]

---

[4]The referenced affidavit is not a part of this record on appeal.

[5]Transcript of Trial, pg. 106 ln. 19-25, pg. 107 ln. 1-9.

[6]Gourley v. Usery (In re Usery), 123 F.3d 1089, 1093 (8th Cir. 1997); O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.), 118 F.3d 1246, 1250 (8th Cir. 1997) (citing First Nat'l Bank of Olathe, Kansas v. Pontow, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[7]First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow), 111 F.3d 604, 609 (8th Cir. 1997); Sholdan v. Dietz (In re Sholdan), 108 F.3d 886, 888 (8th Cir. 1997).

V

We first discuss the bankruptcy court's judgment in favor of Funaro on the Trustee's alleged fraudulent conveyance. The Code provides that the Trustee may avoid a transfer of a debtor's interest in property if the transfer was made within one year of the bankruptcy filing, and if the transfer was made to either deceive creditors or for inadequate consideration:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
>> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>>
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.[8]

A Subchapter S corporation is an entity separate and apart from its owner.[9] As a result, actions taken by the owner for his own benefit, at the expense of the corporation and its creditors, are subject to review in the corporation's bankruptcy. In Parker v. Saunders (In re Bakersfield Westar, Inc.), the Court found that a debtor's pre-petition right to make or revoke its election to be treated as a Subchapter S corporation for federal income tax purposes

---

[8] 11 U.S.C. § 548(a)(1).

[9] Colonial Trust III, et al. v. Dir. Div. Of Taxation, 16 N.J. Tax. 385 404 (N.J. T.C. 1997) (stating that Subchapter S corporations are entities separate and apart from their shareholders); State Tax Commission of Arizona v. Oliver's Laundry & Dry Cleaning Co., 508 P. 107, 108 (Ariz. Ct. App. 1973) (holding that a Subchapter S corporation is a separate legal entity from another corporation owned by the same individuals).

constitutes property within the meaning of the Code.[10] The Court went on to refine the definition of property of the corporation's bankruptcy estate to include "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."[11] Thus, a corporation's right to use, benefit from, or revoke its Subchapter S status falls within the broad definition of property of the estate.[12]

The Trustee's avoidance power derives from his duty to secure for creditors everything of value that a debtor may possess.[13] If the transfer of the right to receive renewal commissions was a transfer of the Corporation's property, then the Trustee had an obligation to pursue that transfer as a fraudulent conveyance. The Trustee, however, had the burden of proving that a fraudulent transfer took place.[14] Funaro argues that the Corporation cannot own the renewal commissions because they only result from Funaro's personal services. We disagree. In Carter v. Anderson (In re Carter),[15] a performer formed a Subchapter S corporation to negotiate her performance contracts. As in this case, the Subchapter S corporation paid all expenses, including salaries, equipment costs, and administrative expenses, and then disbursed the remaining funds to the debtor.[16] The debtor in turn claimed as exempt her right to the disbursements. Despite the fact that the corporation's gross income all derived from debtor's personal performances, the Ninth Circuit found that only the net profits are earnings that may be subject to a claim of exemption. The debtor, therefore, had no right to any moneys from the Subchapter S corporation until all expenses had been paid.[17] Thus, a Subchapter S corporation,

---

[10]226 B.R. 227, 232-33 (9th Cir. B.A.P. 1998).

[11]Id. at 233.

[12]Id. at 234.

[13]Id.

[14]Kaler v. Craig (In re Craig), 144 F.3d 587, 590 (8th Cir. 1998).

[15]182 F.3d 1027 (9th Cir. 1999).

[16]Id. at 1033.

[17]Id.

and its creditors, have a property right in funds paid to the corporation, even though such funds are paid for personal services provided by the owner of the corporation.

Funaro also argues that the renewal commissions would not be property of the Corporation's bankruptcy estate in any event, so they could not be the subject of a fraudulent transfer to him. But here, the Trustee sought to avoid only the transfer of the Corporation's right to receive renewal commissions that were paid pre-petition. If the Corporation held the right to those commissions, the transfer of that right could constitute a fraudulent conveyance. The problem for the Trustee is that he failed to prove what portion of the commissions earned by Funaro, and assigned by contract to the Corporation, were earned during the period in question. Instead, the trustee sought to recover either $69,000.00, the amount of the Corporation's scheduled unsecured debt, or $75,507.00, the net income shown in the Corporation's 1997 income tax return. Neither of those figures represents the commissions paid to Funaro that would have been paid to the Corporation if he had not made the assignments.

There is another problem with the evidence offered by the Trustee. There are several references in the record to the Corporation having executed contracts with three insurance companies to have those companies pay to the Corporation all of Funaro's right to renewal commissions.[18] If so, the Corporation would have a property interest in those contracts, and the Corporation's transfer of that interest could be set aside. The Trustee, however, was unable to produce the contracts themselves. According to the Trustee, he was unable to produce the contracts, or accurate commission statements, because Funaro did not respond to his discovery requests in a timely manner, and when he did respond, he stated he had destroyed all but his tax records. In any event, the Trustee failed to prove what specific property of the Corporation was transferred, and the value of that property.

The bankruptcy court entered judgment in favor of Funaro. As one basis for its holding the court found that the Trustee failed to prove any privity between the insurance companies and the Corporation. Indeed, the court held that the trustee failed to identify any "contract of value" between any insurance company and the Corporation. If the Corporation itself never

---

[18]See, Appellant's Brief and Appendix, A165, and A167,

entered into any agreements with the insurance companies, then it had no right to commissions, and the transfer of those commissions to Funaro would not give rise to a cause of action. We agree that the Trustee did not sustain his burden of proof, since he failed to present sufficient evidence to show that the Corporation did have a right to receive insurance commissions, that it had transferred that right to Funaro, and that such transfer was a fraudulent conveyance. For that reason we affirm the bankruptcy court's judgment in favor of Funaro and against the Trustee.

## VI

Funaro requested sanctions at the conclusion of the trial. As a preliminary matter, in order to impose a Rule 9011 sanction the court must find that an attorney "submitted a claim that has no chance of success under existing precedents and that fails to advance a reasonable argument to extend, modify, or reverse the law as it stands."[19] The bankruptcy court found that there was no legal basis for the litigation, and it granted Funaro's request. According to the trial transcript, the court found that the Trustee never made a colorable claim, and that Rule 11 sanctions were appropriate.[20] The court also commented that the Corporation's bankruptcy estate was entitled to an evidentiary hearing on the amount of the sanctions. The court noted that the only evidence of the amount of the sanctions was in the form of an affidavit and stated, "I'm going to give you the opportunity to have an evidentiary hearing . . . with the understanding that [an evidentiary hearing] may increase the amount of the sanction."[21] The court directed counsel for the Trustee to inform the court within 24 hours if he desired an evidentiary hearing.[22] The Trustee did respond within 24 hours that he did not wish to have an evidentiary hearing, and the court entered judgment in favor of Funaro in the amount of $3,970.00.

---

[19]Baker v. Latham Sparrowbush Assoc. (In re Cohoes Industrial Terminal, Inc.), 931 F.2d 222, 227 (2nd Cir. 1991).

[20]Transcript of Trial, pg. 106, line 3-4 and 15-18.

[21]Id. at pg. 106, line 19-24.

[22]Id. at pg. 107, line 2-4.

On the same date the court entered judgment, the Trustee communicated with the court by mail. [23] In this communication the Trustee stated that he felt he was entitled to a formal motion seeking sanctions and an Order to Show Cause why he did not violate Rule 9011. He also asked for a reasonable time to respond to both the motion and the Order to Show Cause.[24] The court did not respond to his letter and the Trustee filed this appeal.

Rule 9011 of the Rules provides that any Complaint filed with the bankruptcy court must be signed, warranted by existing law, and for a proper purpose:

> (b) **REPRESENTATIONS TO THE COURT**. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;  and

---

[23]Appellant's Brief and Appendix, A5.

[24]Id.

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.[25]

While bankruptcy courts have the power to sanction attorneys for misconduct,[26] that power must be limited in scope. "The judicious and niggardly use of sanctions is viewed by courts as necessary to propagate vigorous advocacy."[27] Sanctions for litigation abuse are intended as a balance between responsible conduct by the litigants and "creative and ardent representation."[28] Courts may not "'rush into an ill-considered imposition of sanctions.'"[29] Rather, courts should consider the imposition of different kinds of sanctions, the effect of the sanctions on the litigation, and the ability of prejudiced parties to present their case in light of the misconduct.[30] Furthermore, prior to imposing sanctions, Rule 9011(c) requires the court to find that specific procedural requirements have been met:

(c) **SANCTIONS**. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How initiated

(A) By motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct

---

[25]Fed. R. Bankr. P. 9011(b).

[26]See, 11 U.S.C. §§ 362(h), 524, and 105(a) and Fed. R. Bankr. P. 9020 and 9011(c); Brown v. Mitchell (In re Arkansas Communities, Inc.), 827 F.2d 1219, 1221 (8th Cir. 1987); In re Brown, 152 B.R. 563, 567 (Bankr. E.D. Ark. 1993).

[27]J. Scott Humphrey, Sanctions Against the Creditor's Attorney in Non-reorganization Bankruptcy Proceedings, **6 Bankr. Dev. J.** 481, 482 (1989).

[28]Id.

[29]In re Brown, 152 B.R. 563, 569 (Bankr. E.D. Ark. 1993).

[30]Id.

11

alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) On court's initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) Nature of sanction; limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

12

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.[31]

Pursuant to the express language in Rule 9011, an individual seeking sanctions must file a separate motion that specifically describes the conduct that allegedly violates Rule 9011(b). The party against whom sanctions are sought must be granted a reasonable opportunity to respond before the court makes a determination that there has been a violation.[32] Assuming all procedural safeguards are followed, and after a determination that a party has violated Rule 9011(b), the court must determine what sanctions are appropriate.[33] In this case, the bankruptcy court imposed sanctions at the conclusion of the hearing, despite the fact that Funaro did not file a formal motion for sanctions. Moreover, the bankruptcy court found that the Trustee violated Rule 9011 before the Trustee had any opportunity to respond, let alone a reasonable opportunity to respond.

The bankruptcy court could have imposed sanctions against the Trustee on its own initiative, but only after it entered an Order to Show Cause that described the specific conduct that allegedly violated Rule 9011(b), and directed the Trustee to show cause why he had not violated Rule 9011(b).[34] The bankruptcy court did not issue such an Order to Show Cause. The court may act without a hearing if, following a motion for sanctions and the opportunity for a

---

[31]Fed. R. Bankr. P. 9011(b) and (c).

[32]Id. at 9011(b); Walton v. LaBarge (In re Clark), 223 F.3d 859, 864 (8th Cir. 2000).

[33]In re Brown, 152 B.R. 563, 567 (Bankr. E.D. Ark. 1993).

[34]Fed. R. Bankr. P. 9011(c)(1)(B).

13

hearing, no party requests one.[35] In Snyder v. Dewoskin (In re Mahendra),[36] the bankruptcy court imposed sanctions on debtor's attorney without a hearing. But the trustee in that Chapter 7 case filed a separate motion for sanctions, to which there was no response, prior to the court's ruling.[37] Mere knowledge that one party requested sanctions is not sufficient. Rather, the court must give notice that it is considering sanctions.[38] The notice must specify the conduct alleged to be sanctionable, the standard by which the conduct will be assessed, and the authority under which sanctions are being considered.[39] Such notice was not given here.

Procedural problems aside, we hold that the court erroneously found the Trustee to have acted in violation of Rule 9011. That Rule requires the court to make an objective determination of whether a party's conduct was reasonable under the circumstances.[40] Rule 9011 requires only that an attorney make a reasonable inquiry prior to filing a Complaint.[41] In In re Cohoes Industrial Terminal, Inc., the court found that a Chapter 11 bankruptcy petition was not frivolously filed, within the meaning of Rule 9011, where the court had rejected a motion to dismiss the petition.[42] The court reasoned that a decision not to dismiss the petition indicated that the petition had some valid basis in law.[43] In making its objective determination, the court should also consider whether anything in the record reflects a tenable basis for the

---

[35]Clark, 223 F.3d at 864.

[36]131 F.3d 750 (8th Cir. 1997).

[37]Id. at 758.

[38]Id.

[39]Sakon v. Andreo, 119 F.3d 109, 114 (2nd Cir. 1997).

[40]Snyder v. Dewoskin (In re Mahendra), 131 F.3d 750, 759 (8th Cir. 1997); In re Brown, 152 B.R. 563, 567 (Bankr. E.D. Ark. 1993).

[41]Med-Tech Consulting, Inc. v. Swendra (In re Swendra), 938 F.2d 835, 838 (8th Cir. 1991).

[42]Cohoes, 931 F.2d at 299.

[43]Id.

allegations contained in the Complaint.[44] In this case the Trustee first obtained an Order from the bankruptcy court lifting the automatic stay in order to proceed with this litigation against Funaro. The bankruptcy court later denied Funaro's oral motion for summary judgment, again demonstrating that there might be some basis for the litigation. And it is undisputed that Funaro did assign, within one year of the Chapter 7 filing, whatever right the Corporation may have had to receive commissions. For the reasons shown, it appears that there was some basis for the litigation even though the Trustee did not ultimately prevail. Thus, there was no basis for the court to find either that the Complaint was filed for an improper purpose, or that the contentions therein were not warranted by existing law.

Rule 9011 also requires that the pleading have evidentiary support, or be likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.[45] The Rule thus imposes a continuing duty on the plaintiff to dismiss a cause of action if he learns, or has reason to learn, that he will not be able to offer evidence sufficient to sustain his burden. Here, at the time the Trustee filed the Complaint, there was evidence that the Corporation had declared a dividend, paid that dividend to its owner, and then declared bankruptcy with virtually no remaining assets available for its creditors. Furthermore, there was evidence that insurance companies, which had previously paid commissions to the Corporation, were, instead, paying those same commissions to Funaro. Those facts provide sufficient evidentiary support for the Trustee to have filed the Complaint. The Trustee claims that he could not further develop evidentiary support for his allegations because Funaro failed to cooperate, either by responding to discovery requests in a timely manner, or by signing the appropriate releases to allow the Trustee to obtain necessary documents from the insurance companies. Funaro did admit in his interrogatories that the only records he had in his possession were tax-related.[46] As to the others, he stated that no one had requested any documents from him when he first filed both his own Chapter 13 petition, and the Chapter 7 petition on behalf of the Corporation, so he

---

[44]Lamson v. Russ (In re Russ), 187 F.3d 978, 981 (8th Cir. 1999).

[45]Fed. R. Bankr. P. 9011(b)(3).

[46]Appellant's Brief and Appendix, A156, pg. 3.

15

considered it harmless to discard his commission statements and other documents.[47] Nevertheless, as President of the Corporation, Funaro was obligated to cooperate with the Trustee and to surrender to the Trustee all books, documents, records, and papers relating to property of the estate.[48] Certainly, the Trustee might have been more likely to prevail if he had filed motions to compel discovery, or to strike Funaro's Answer based upon his failure to adequately respond to discovery requests. But the issue is whether the Trustee developed facts sufficient to justify filing the Complaint, and proceeding to trial.

At trial, the Trustee called as an expert witness an insurance agent who testified that it is not unusual for agents to assign commissions to corporations, and that such assignments are assets of such corporations. As shown, he also offered evidence sufficient to show that some assets were transferred from the Corporation to Funaro within one year of the Chapter 7 case, though he was unable to prove the nature and value of the transferred property. We hold that, while he did not sustain his burden of proof, the Trustee did have a reasonable basis to contend that the Corporation had fraudulently transferred assets to Funaro.

Based on the above, we conclude that the bankruptcy court erred in finding that the Trustee violated Rule 9011(b).

VII

ACCORDINGLY, we reverse the bankruptcy court's imposition of sanctions. We affirm the bankruptcy court's judgment in favor of the defendant and against the Chapter 7 trustee. Debtor Frank Funaro's Motion for an Award of Damages and Costs for filing a frivolous appeal is denied.

---

[47] Id.

[48] 11 U.S.C. § 521.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT