In re Eugene Peter SHOLDRA, Debtor.

John Litzler, Trustee, Plaintiff,

v.

Eugene Peter Sholdra, Defendant.

Bankruptcy No. 98–44732–DML–7.
Adversary No. 00–04151.

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

Oct. 26, 2001.

John Litzler, Dallas, TX, for plaintiff.

Clifford Franklin McMaster, Fort Worth, TX, for defendant.

## MEMORANDUM OPINION

DENNIS MICHAEL LYNN,
Bankruptcy Judge.

This adversary proceeding is before the Court[1] by reason of a motion filed by Plaintiff John Litzler as trustee ("Plaintiff" or "Trustee") seeking summary judgment against Eugene Peter Sholdra ("Defendant" or "Sholdra"), debtor in the underlying Chapter 7 bankruptcy case. This Court has jurisdiction pursuant to 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b).[2]

1. The adversary proceeding and underlying bankruptcy case were originally assigned to the Hon. Massie Tillman. Upon the conclusion of Judge Tillman's fourteen year term, both were reassigned to the Hon. Barbara J. Houser, who heard oral argument on Plaintiff's motion on September 4, 2001. The adversary proceeding and bankruptcy case were subsequently reassigned to the undersigned bankruptcy judge by order dated September 24, 2001. Having listened to a recording of the oral argument and reviewed all pleadings pertinent to Plaintiff's motion, the undersigned does not deem necessary further proceedings prior to ruling on the motion.

## I.

### Background

Sholdra, an Ophthalmologist, filed for relief under Chapter 7 of the Bankruptcy Code (the "Code") on August 4, 1998. Shortly thereafter Plaintiff was appointed Trustee and has acted in such capacity ever since. Prior to filing bankruptcy and at least until July of this year,[3] Sholdra conducted his practice through a professional corporation, the Eugene P. Sholdra, M.D., P.A. (the "P.A."), organized under Subchapter S of the Internal Revenue Code. Besides Sholdra, the P.A. employed only his wife as office manager and a part-time clerk. Sholdra has at all times been the only professional employed by the P.A.

As a result of the filing of Sholdra's Chapter 7 case, the stock of the P.A. (the "Stock") became property of the estate created pursuant to Section 541 of the Code. Because state law prohibits one who is not licensed to practice the profession for which a professional corporation is organized from owning its stock (see TEX. REV.CIV. STAT. art. 1528f § 10 (2000); see also Eikenhorst v. Eikenhorst, 746 S.W.2d 882, 887 (Tex.App.—Houston [1st Dist.] 1988)), the Trustee did not take title to the Stock. Thus, Sholdra continues to hold the Stock and serve as an officer of the P.A.

2. In the event Plaintiff is ultimately determined to have a cause of action against Sholdra or any other entity under state law or federal law other than the Bankruptcy Code for conversion of property of the estate, the Court reserves decision as to whether such a cause of action would be a core proceeding.

3. Plaintiff alleges that Sholdra moved his practice in July. The allegation is irrelevant to this adversary proceeding.

Prior to and since the commencement of the bankruptcy, Sholdra caused the P.A. to pay him a salary. Until 1999 the salary was equal to 20% of the P.A.'s profits. In addition the P.A. directly paid certain expenses of Sholdra and made distributions of profits to Sholdra. In 1999, Sholdra directed his accountant to increase the percentage of profits devoted to his salary, and for 1999 Sholdra's salary equaled 24.81% of the P.A.'s income. In 2000, Sholdra's salary was again increased as a percentage of the P.A.'s income.

## II.

### The Positions of the Parties

The Trustee filed his original complaint on October 18, 2000 seeking recovery under Section 549 of the Code of payments other than his salary (the "Payments") made by the P.A. since January 1, 1999 to or on behalf of Sholdra.[4] As Plaintiff, it is the Trustee's contention that the Payments constituted property of the estate as "profits" generated by estate property (i.e., the Stock) within the meaning of Section 541(a)(6) of the Code.

Defendant, on the other hand, argues that the Payments fall within the exception provided by Section 541(a)(6) for "earnings from services performed by an individual debtor after the commencement of the case."

Plaintiff contends that Defendant is bound by his tax returns and the Statement of Financial Affairs filed in his bankruptcy case. These documents are dispositive, argues Plaintiff, of what is, for Sholdra, a reasonable salary, which represents all Sholdra was entitled to under the earnings exception.[5] The Payments therefore must be turned over to the Trustee.[6]

Defendant takes the position that the distributions from the P.A. reflected on his tax returns and Statement of Financial Affairs as other than salary are nevertheless earnings falling within the exception provided in Section 541(a)(6) of the Code. He argues this is so since all of the P.A.'s receipts are attributable to Sholdra's personal services.

## III.

### The Issue Presented

Federal Rule of Civil Procedure 56 governs summary judgment actions. The rule requires that if "there is no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter

4. In the original complaint the Trustee relied entirely on Section 549. On March 2, 2001, the Trustee filed an amended complaint asserting that Sholdra had "converted" property of the estate by increasing his salary beyond 20% of the P.A.'s profits. Perhaps realizing that many (if not all) of the "transfers" complained of were made by the P.A., and so (as discussed *infra*) were not transfers of property of the estate, in the Motion for Summary Judgment Plaintiff characterizes all his claims as arising from the conversion of estate property, a trend continued in the pretrial order, filed after oral argument, which couches the issues presented by this adversary wholly in terms of "conversions" (though ¶ D.1 of the pretrial order lists as a contested issue of law whether the Trustee is entitled to judgment under Section 550 of the Code-a provision applicable only if the Trustee's cause of action arises under Section 549 of the Code).

5. There is considerable dispute between the parties concerning admissibility of expert affidavit testimony. Given the Court's decision, these disputes need not be addressed.

6. Corporate earnings of a Subchapter S Corporation are credited to its shareholders for tax purposes, 26 U.S.C.S. § 1366 (2001) *See Attebury v. United States*, 430 F.2d 1162, 1163 n. 2 (5th Cir.1970), and will be reflected in K-1's issued by the corporation. Thus, all distributions of profits from the P.A. went, of necessity, to Sholdra as sole shareholder.

of law." FED.R.CIV.P. 56(c). The court must evaluate the evidence proffered by the parties and determine whether a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here, however, the parties have a fundamental disagreement as to the meaning of a provision of the Code. Thus, the issue the Court must address is not whether Plaintiff is entitled to judgment on undisputed facts but rather, under Section 541(a)(6) of the Code, what property passes to the estate and what property belongs to the debtor.

## IV.

### *Discussion*

A. *Has Plaintiff Stated a Valid Claim for Relief?*

As discussed, *supra*, note 4, the Trustee's claims have metamorphosed over time. When he began this action, he sought relief under Section 549 of the Code, which allows the Trustee to "avoid a transfer of property of the estate ... made after the commencement of the case." By the time of the filing of the Motion for Summary Judgment, his claims were premised on Defendant's "conversion" of estate property, and no mention was made of Section 549 (the first mention of "conversion" came in the Trustee's amended complaint, in which Plaintiff used the term to attack Sholdra's instructions to his accountant to increase his salary).

■ The P.A. is a separate entity from the estate. *Halverson v. Funaro (In re Funaro)*, 263 B.R. 892 (8th Cir. BAP 2001); *see also Parker v. Saunders (In re Bakersfield Westar, Inc.)*, 226 B.R. 227, 234 (9th Cir. BAP 1998). Any profits from the P.A.'s operations were property of the P.A. until it distributed them. Thus, the Payments by the P.A. were not transfers of property of the estate and are not avoidable by Plaintiff. 5 COLLIER ON BANKRUPTCY ¶ 549 04[1] (15th ed. rev.2001); *see also E.A. Martin Machinery Co. v. Williams (In re Newman)*, 875 F.2d 668, 670 (8th Cir.1989); *see also Dominican Fathers of Winona v. Dreske (In re Dreske)*, 25 B.R. 268, 271 (Bankr.E.D.Wis.1982).

If, however, the Payments represent "profits" from property of the estate (the Stock) within the meaning of Section 541(a)(6), then, upon their receipt, Sholdra was obligated to turn them over to the Trustee. 11 U.S.C. § 542(a). If, therefore, the Payments, upon reaching Sholdra, constituted property of the estate and Sholdra converted them to his own use, the Trustee would have a cause of action against Sholdra.[7]

B. *Are the Payments Property of the Estate or Earnings Excepted from Section 541(a)(6)?*

1. The Tax Returns and Statement of Financial Affairs.

■ Before turning to a legal analysis of the character of the Payments, the Court must consider whether the P.A. tax returns and K–1's, Sholdra's tax returns or Sholdra's Statement of Financial Affairs indisputably establishes that the Payments were property of the estate. Plaintiff has

---

7. The Court will not at this time address whether "conversion" of the Payments to his own use by Sholdra could be a transfer subject to avoidance under Section 549; or, if not, whether the Trustee's original complaint or the amended complaint was sufficient to state a cause of action for conversion. Instead the Court will assume that the amended complaint states a cause of action for recovery of any property of the estate received by Sholdra and proceed to a determination of whether the Payments fell within the exception to Section 541(a)(6).

consistently argued that these documents in effect are incontrovertible admissions that only what is reflected as "salary" or "wages" could be Defendant's post-petition earnings.

For 1998 [8], the P.A. reported on its form 1120S $64,090 as income after deducting, *inter alia,* compensation of officers and others. No dividends are shown on the form, but it lists "distributions . . . other than dividends" of $69,840. On the K–1 issued to Sholdra for 1998 "[o]rdinary income" of the P.A. of $64,090 and "[d]istributions other than dividends" of $69,840 are reflected. On his personal form 1040 for 1998, Sholdra shows *no* income from dividends but does reflect $58,959 of income from, *inter alia,* Subchapter S Corporations.[9]

In his Statement of Financial Affairs (Official Form 7), in response to question two, Sholdra lists his non-salary income from the P.A.: [10]

> "His income for 1998 as shareholder of the P.A. has not yet been determined."
> "For 1997 his income other than wages from the P.A. was about $50,687.00."

Plaintiff stresses that Sholdra thus admits in documents filed with the Internal Revenue Service and the Bankruptcy Court that, other than his salary or wages, Sholdra had no "earnings" from the P.A. of the kind excepted from Section 541(a)(6) of the Code.

Even assuming that the meaning of "earnings" for purposes of Section 541(a)(6) would be the same as under the Internal Revenue Code, the Court finds that the tax returns and K–1's provide no support for Plaintiff's position. The tax documents are, at a minimum, not inconsistent with Defendant's argument that the Payments were generated through his personal services. Certainly they do not support Plaintiff's assertion that the Payments constituted dividends on the Stock of the P.A.

While the way Sholdra reflected distributions from the P.A. on his Statement of Financial Affairs provides some support for Plaintiff's argument that the Payments are in the nature of dividends, it is hardly dispositive. The purpose of the Statements of Financial Affairs and Schedules is primarily disclosure, and a debtor's characterization of an event, asset, or liability in those documents does not constitute taking an immutable legal position. *See In re Cobb,* 56 B.R. 440, 442 n. 3 (Bankr.N.D.Ill.) and cases cited therein.

## 2. *The Bankruptcy Code*

■■■ The proper place to begin in interpreting language of the Bankruptcy Code is with the plain meaning of the words at issue. *See In re Luongo,* 259 F.3d 323, 336 (5th Cir.2001). The most obvious way to read Section 541(a)(6) is that it includes within the estate of an individual debtor profits of estate property *unless* the profits are earned through the personal services (i.e., labor) of the debtor.

Plaintiff, however, contends that "earnings from services performed by an individual debtor," as the term is used in

---

**8.** The Court reviews Defendant's 1998 tax return because it is appended to the original complaint (though Plaintiff does not seek recovery of payments to Sholdra in 1998, the tax returns for subsequent years follow the same pattern).

**9.** The discrepancy between income shown on his K–1 and that on his tax return is mostly attributable to the year's proportion of a credit arising from a change in accounting methods.

**10.** Question two requires the debtor to list "[i]ncome other than from employment or operation of business."

Section 541(a)(6), is limited to the salary or wages earned by the debtor. Thus, argues Plaintiff, the Payments, not being salary or wages, are income of the P.A., which becomes property of the estate pursuant to Section 541(a)(6) when distributed, since they must be the dividends on the Stock.

 This ignores the use by Congress of the terms "earnings", "salary" and "wages" elsewhere in the Code. Congress acts intentionally in its choice of words. *See, e.g., BFP v. Resolution Trust Corp.* 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994), *citing Chicago v. Environmental Defense Fund,* 511 U.S. 328, 338, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994). Congress clearly intended by the term "earnings" something broader than salary or wages. Sections 503(b)(1)(A) and 507(a)(3)(A) refer to "wages, salary and commissions," and sections dealing with collective bargaining agreements make reference only to "wages." 11 U.S.C. § 1113(c), § 1167. On the other hand see Sections 1207(a)(2), 1306(a)(2) and § 522(d)(11)(E) of the Code which, like Section 541(a)(6), use the term "earnings."

Reading "earnings" as broader in scope (or at least something other) than salary or wages is consistent with both the common meanings accorded the words and the meanings given in Black's Law Dictionary. Wages are paid for time actually worked.[11] Salary refers to a periodic payment for services rendered without regard to time worked.[12] Earnings refers to all income generated by an individual.[13]

In Section 541(a)(6), the Court concludes that Congress meant to except from the estate and reserve to the debtor post petition earnings to which the estate might otherwise have a claim if they were not attributable to the debtor's personal services. In *Carter v. Anderson,* 182 F.3d 1027 (9th Cir.1999), a case dealing with a pre-bankruptcy distribution by a Subchapter S Corporation to its stockholder,[14] the Ninth Circuit construed California Civil Procedure Code § 706.011 which defines earnings as follows:

> (a) "Earnings means compensation payable by an employer to an employee for personal services performed by such employee, whether denominated as wages, salary, commission, bonuses, or otherwise."

*Carter,* 182 F.3d at 1029 (*citing* Cal.Civ. Proc.Code § 706.011 (1999)). The Court of Appeals in *Carter* noted that, whatever the definition encompassed, it was "at least clear that a primary criterion [to qualify as earnings] is that the payments must be for 'personal services performed.' " 182 F.3d at 1032–33. This Court believes the allocation of "earnings" as used in Section 541(a)(6) of the Code also turns primarily on who performed the services creating them.

---

11. "Wage" is defined as "payment for labor or services, usually bases on time worked or quantity produced." Black's Law Dictionary 1373 (7th ed.1999).

12. "Salary" is "an agreed compensation for services ... usually paid at regular intervals on a yearly basis, as distinguished from an hourly basis." *Id.* At 1337.

13. Black's defines "earnings" as "[r]evenue gained from labor or services, from the investment of capital, or from assets." *Id.* at 526.

14. *Carter* involved a Chapter 7 debtor's claim that income from a wholly-owned Subchapter S Corporation was exempt as "earnings" under California law. The court rejected the trustee's claim that the debtor's characterization of revenues of the corporation as "net profits" meant they could not be earnings (182 F.3d at 1033). While the *Carter* court's analysis is not of Section 541(a)(6), its discussion of income from a Subchapter S Corporation as "earnings" is useful and supportive of this Court's reading of the Bankruptcy Code.

### 3. Other Case Law

Dealing first with the authorities cited by Plaintiff, they are either inapposite or support the Court's interpretation of the earnings exception.

*United States v. Ladum,* 141 F.3d 1328 (9th Cir.1998) was a criminal case in which bankruptcy fraud was one of the charges. The only relevance of *Ladum* to the instant case is that it cites approvingly the Ninth Circuit's earlier decision, *In Re FitzSimmons,* 725 F.2d 1208 (9th Cir. 1984), discussed *infra. Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) related to the extent of a debtor's discharge [15] under the Bankruptcy Act of 1898 and offers no guidance in interpreting Section 541(a)(6) of the Code. The same is true of *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), which established that a tax loss carry back was property of the estate but does not help this Court determine the proper application of Section 541(a)(6) in the case of Dr. Sholdra.

*In re Prince,* 127 B.R. 187 (N.D.Ill. 1991), cited by Plaintiff, involved valuation of an orthodontist's practice in a Chapter 11 case in which the debtor orthodontist had agreed to pay to his creditors the value of the practice. It is analogous not to the issue now before the Court but rather to the methodology for valuation of the P.A. for purposes of sale.[16]

The one case cited by Plaintiff which sheds light on the application of Section 541(a)(6) to the Payments is the Ninth Circuit's decision in *FitzSimmons, supra. FitzSimmons* involved the Chapter 11 case of an attorney who operated a sole proprietorship [17] that employed other lawyers. The Court of Appeals held that the debtor was entitled to except from the estate "the portion of the law practice's earnings that were attributable to [his] personal efforts." 725 F.2d at 1212. Earnings from the work of other lawyers would be property of the estate. This result is consistent with the position taken by Defendant, since Defendant claims all earnings of the P.A. were attributable to his personal services.[18]

**15.** The Court is aware that Sholdra was denied his discharge by default judgment and that the earnings exception to Section 541(a)(6) relates to the fresh start policy furthered by the discharge provisions of the Code. However, the meaning of Section 541(a)(6) necessarily must be the same whether or not the debtor received a discharge.

**16.** As noted, *supra,* the Trustee has asserted that Sholdra has moved his practice, gutting the value of the P.A. Whether Sholdra's actions give rise to an independent cause of action is not determinable from the Trustee's allegations. However, Sholdra was not restrained by any duty from leaving the P.A. To force him to remain with the P.A. would amount to involuntary servitude. Moreover the Trustee's contentions in this adversary proceeding certainly gave Sholdra ample motive to leave the P.A. and practice his profession elsewhere. Indeed, Sholdra's freedom to leave the P.A., which would result in all likelihood in his patients following him, is yet one more reason why Congress would intend

"earnings" to constitute a broad enough exclusion from Section 541(a)(6) to encourage a professional like Sholdra to remain employed by an entity owned by his bankruptcy estate.

**17.** Under the reasoning of *FitzSimmons* (and *Cooley, infra*), the distinction between a sole proprietorship and a Subchapter S Corporation is immaterial for purposes of construing Section 541(a)(6) of the Code. The *FitzSimmons* court considered the sole proprietorship to be the "property of the estate," just as the P.A., through the Stock, is owned by the estate.

**18.** Plaintiff argues that, if the P.A. had multiple shareholders, profits would be divided among them without necessarily relying on the labor contributed by each. The significance of this argument escapes the Court. While such a case might present issues of fact (see, *Cooley, infra*), it would not alter the principle that, as opposed to the estate, a debtor is entitled under Section 541(a)(6) to the fruits of his labor.

In addition to the cases cited by Plaintiff (Defendant cited no legal authorities in support of his position), the Court has found several decisions which are helpful. *Carter*, already discussed, is useful both in shedding light on the meaning of "earnings from personal services" and in understanding the peculiar relationship between a Subchapter S Corporation and its owner. *See also Halverson v. Funaro (In re Funaro)*, 263 B.R. 892 (8th Cir. BAP 2001).

*In re Cooley*, 87 B.R. 432 (Bankr. S.D.Tex.1988), another sole proprietorship case, involved a debtor surgeon who employed other surgeons. The court there took an even broader view than the Ninth Circuit of the earnings exception in Section 541(a)(6), allowing the debtor to except from the estate earnings of the sole proprietorship beyond revenue derived solely from surgeries he performed or advised or assisted in. The court reasoned that Dr. Cooley produced (earned) additional revenues because his reputation as a heart surgeon resulted in referrals to his colleagues. *See Cooley*, 87 B.R. at 435.

More promising for Plaintiff is *In re Herberman*, 122 B.R. 273 (Bankr.W.D.Tex. 1990). That case involved a urologist operating as a sole proprietor who filed Chapter 11. The court determined that the debtor was entitled to a salary of 75% of the income of the practice. In *Herberman* the court considered the debtor's fiduciary duty as a Chapter 11 debtor and the "enterprise value" of the debtor's practice in setting aside 25% of the profits for the estate.

The *Herberman* court's decision, however, did not equate "salary" with "earnings"

as the term is used in Section 541(a)(6). In fact, the court concluded that the earnings exception to Section 541(a)(6) did not apply because the debtor's earnings did not constitute income from property of the estate. Rather, the court determined that Section 541(a)(7) of the Code controlled, and the income produced by the debtor's urology practice was property acquired by the estate after the commencement of the case.

In the instant case, where the Payments were clearly produced through the operation of the P.A., the Stock of which is property of the estate, *Herberman's* reliance on Section 541(a)(7) is inapplicable. Moreover, the *Herberman* court's emphasis on a Chapter 11 debtor's fiduciary duty is not relevant in the context of Sholdra's Chapter 7 case.

The Court does find *Herberman's* distinction between income from the debtor's personal services and that from "enterprise value" useful. Thus, the Court concludes that the P.A. may have generated some income other than purely through Sholdra's services. Equipment, corporate goodwill or other assets of the P.A. may account for part of the Payments.[19]

## V.

### Conclusion

A professional corporation is a device allowed under state law to give professionals the protection of corporate status. Subchapter S of the Internal Revenue Code permits individuals to obtain the benefit of corporate status without incurring the penalty of a corporate tax. While the

---

**19.** For example, Sholdra may perform procedures requiring specialized equipment owned by the P.A. To the extent the charges for these procedures are attributable to the equipment, the P.A. may realize income other than from Sholdra's services.

way in which a Subchapter S Corporation allocates income—as between salaries and other distributions—may have consequences under the tax laws, it is, at most, one factor to be considered in distinguishing between income to the estate and earnings from personal services under the Bankruptcy Code.

 The test of whether earnings[20] are excluded from the estate pursuant to Section 541(a)(6) is whether they are produced by the debtor's personal services or by something else.

Plaintiff has presented no evidence that the Payments resulted other than from Defendant's personal services. Defendant has produced affidavits stating that his work was the source of the Payments. Sholdra Aff. ¶ 3. This is not to say that some part of the Payments was not the product of assets of the P.A. rather than just Sholdra's labor. However, even aside from the questions raised about the legal viability of the Trustee's claims (note 7, *supra*), in the absence of any evidence that there is property of the estate at issue, the Motion for Summary Judgment must be DENIED.

---

20. It is noteworthy that the revenues the Trustee seeks to recover are taxable, necessarily, to Sholdra. As the only stockholder of the P.A., he must pay the taxes on all its corporate earnings. *See Attebury v. United States,* 430 F.2d 1162, 1163 n. 2 (5th Cir.1970).