**In re Nell CARTER, Debtor.**

**Nell Carter, Appellant,**

**v.**

**Peter C. Anderson, Chapter 7 Trustee, Appellee.**

**No. 97–55117.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 1999

Filed Aug. 11, 1999

Steven E. Smith, Danning, Gill, Diamond & Kollitz, Los Angeles, California, for the appellant.

Julie A. Page and John P. Pringle, Roquemore, Pringle & Moore, Los Angeles, California, for the appellee.

1. A "subchapter S" corporation is a corporation formed to take advantage of the tax treatment provided by Subchapter S of the Internal Revenue Code, 26 U.S.C. § 1361 *et seq.*

Before: D.W. NELSON, FERNANDEZ, and WILLIAM A. FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Appellant-debtor Nell Carter filed for personal bankruptcy under Chapter 7. In her bankruptcy schedules she claimed that a check for $43,260.58 received from her subchapter S corporation constituted employee earnings under California Civil Procedure Code ("C.C.P.") § 706.011 and was therefore exempt from inclusion in the bankruptcy estate under C.C.P. § 704.070(b). The bankruptcy court sustained the trustee's objection to Carter's claimed exemption, and a divided panel of the Ninth Circuit Bankruptcy Appellate Panel affirmed. We reverse and remand for further proceedings.

*Background and Prior Proceedings*

Carter, a professional entertainer, is the sole shareholder, director, and officer of a subchapter S corporation named Krynicki, Inc. ("Krynicki").[1] Krynicki enters into agreements with nightclubs, casinos, and other establishments at which Carter entertains, and Carter is then paid by Krynicki for her services.

On April 3, 1995, Krynicki issued to Carter a check for $43,260.58. The "pay stub" attached to the check indicated "earnings" of $78,714.00, "YTD [year-to-date] earnings" of $78,714.00, a pay period from 4–03–95 to 4–03–95, and deductions of $35,453.42 for income and other taxes. On April 11, 1995, Carter filed a petition for Chapter 7 bankruptcy. On April 25, 1995, Carter filed Schedule C claiming $39,000 as an exemption from the estate, corresponding to the estimated amount of money from the check remaining in her bank account at the time of the filing.[2]

2. Carter actually prepared and signed her bankruptcy petition and schedules, reflecting the April 3 check, prior to April 3. The plans

The trustee does not dispute that $39,000 was the amount remaining.

The trustee objected to the claimed exemption. Because California has opted out of the federal scheme of exemptions under 11 U.S.C. § 522(d), *see* C.C.P. § 703.130, Carter's right to the exemption is determined under California law. The exemption was claimed pursuant to C.C.P. § 704.070(b), which allows a debtor to exempt 75 percent of "paid earnings," as "earnings" are defined in § 706.011. In relevant part, § 706.011 provides:

> (a) "Earnings" means compensation payable by an employer to an employee for personal services performed by such employee, whether denominated as wages, salary, commission, bonus, or otherwise.

> . . . . .

> (c) "Employee" means a public officer and any individual who performs services subject to the right of the employer to control both what shall be done and how it shall be done.

> (d) "Employer" means a person for whom an individual performs services as an employee.

> . . . . .

> (g) "Person" includes an individual, a corporation, a partnership or other unincorporated association, a limited liability company, and a public entity.

Whether Carter properly claimed the exemption under California law depends on whether Carter was an "employee" of Krynicki and received the $43,260.58 check as "earnings."

The trustee contends that Carter drained Krynicki's corporate account on the eve of bankruptcy and mischaracterized the April 3 payment as employee

earnings under § 706.011 in order to exempt it from the bankruptcy estate. At a hearing before the bankruptcy court on October 3, 1995, Carter argued that she was an employee of Krynicki, whereas the trustee argued that she was an independent contractor. (Payments to an independent contractor are not treated as employee earnings under § 706.011 and are thus not exempted from the estate.) During that hearing, the bankruptcy court focused exclusively on the question of Carter's employee or independent contractor status. The hearing was continued until November 14, 1995, at which point Carter again argued that she was an employee. With no further discussion and without findings of fact, the bankruptcy court at that hearing sustained the trustee's objection to the claimed $39,000 exemption.

A divided panel of the Ninth Circuit Bankruptcy Appellate Panel ("BAP") affirmed. The majority concluded, "The trustee's evidence rebutted Carter's prima facie exemption claim. Carter was unsuccessful in producing sufficient evidence to show that she was an employee. The bankruptcy court's implicit finding that Carter was not compensated as an employee was not clearly erroneous[.]" The dissent argued for a remand on the ground that the bankruptcy court may have misunderstood the relationship between a subchapter S corporation and its shareholder/employee.

## Discussion

■■■ For Carter to be entitled to an exemption under § 706.011, she must show both that she was an "employee" of Krynicki and that the check for $43,260.58 was payment of "earnings" within the meaning of that provision.[3] We discuss "employee" status and "earnings" in turn.

---

for the bankruptcy filing clearly anticipated the April 3 payment.

**3.** We note that there was sustained discussion and some disagreement in the bankruptcy court and the BAP concerning burdens of proof, production and persuasion. The bur-

dens of production and persuasion were properly set forth by the BAP. A claimed exemption is "presumptively valid." 9 Collier on Bankruptcy, ¶ 4003.04 (15th ed. rev. 1998); *In re Patterson*, 128 B.R. 737, 740 (Bankr.W.D.Tex.1991). Carter claimed $39,000 as an exemption under C.C.P. § 704.070,

### 1. Was Carter an "employee" under § 706.011?

■ The distinction between an employee or an independent contractor is made in many areas of the law, including income taxation (see *Spicer Accounting, Inc. v. United States,* 918 F.2d 90 (9th Cir.1990)), Employment Retirement Income Security Act of 1974 (ERISA) (see *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)), workers' compensation (see *S.G. Borello & Sons, Inc. v. Dep't. of Indus.,* 48 Cal.3d 341, 256 Cal.Rptr. 543, 769 P.2d 399 (1989)), and employment discrimination (see *Adcock v. Chrysler Corp.,* 166 F.3d 1290 (9th Cir.1999), *petition for cert. filed,* 67 U.S.L.W. 3749 (U.S. May 10, 1999) (No. 98–1902)), among many others. Indeed, whenever a federal statute uses the term "employee" and "contains no other provision that either gives specific guidance to the meaning of the term 'employee' or suggests that the common law definition is inappropriate, we must presume that Congress intended to incorporate traditional principles of agency law." *Loomis Cabinet Co. v. OSHRC,* 20 F.3d 938, 941 (9th Cir.1994) (citing *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)). California has also recognized that "[m]uch 20th-century legislation for the protection of 'employees' has adopted the 'independent contractor' distinction as an express or implied limitation on coverage." *S.G. Borello & Sons,* 48 Cal.3d at 350, 256 Cal.Rptr. 543, 769 P.2d 399. When a distinction between "employees" and "independent contrac-tors" becomes relevant, both federal and state law provide multiple-factor tests that distinguish one from the other.

■ California follows the traditional common law distinction between "employees" and "independent contractors," generally referring to the factors set forth in the Restatement (Second) of Agency § 220. *See id.* at 350–351, 256 Cal.Rptr. 543, 769 P.2d 399 (1989). The "principal test" is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id.* at 350, 256 Cal.Rptr. 543, 769 P.2d 399 (quoting *Tieberg v. Unemployment Ins. Appeals Bd.,* 2 Cal.3d 943, 946, 88 Cal.Rptr. 175, 471 P.2d 975 (1970)). California courts have developed multiple factors indicative of "control," including: (1) whether the person performing services is engaged in a distinct occupation or business; (2) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (3) the skill required in the particular occupation; (4) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (5) the length of time for which the services are to be performed; (6) the method of payment, whether by the time or by the job, (7) whether or not the work is a part of the regular business of the principal; and (8) whether or not the parties believe they are creating the relationship of employer-employee. *See S.G. Borello & Sons,* 48

---

and this claim is presumptively valid. Once an exemption has been claimed, it is the objecting party's burden (the trustee in this case) to prove that the exemption is not properly claimed. *See* Fed. R. Bankr.P. 4003(c). Initially, this means that the objecting party has the burden of production and the burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption. *In re Lester,* 141 B.R. 157, 161 (S.D.Ohio 1991). If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper. *See In re Moneer,* 188 B.R. 25, 28 (Bankr.N.D.Ill.1995); Fed.R.Evid. 301. The burden of persuasion, however, always remains with the objecting party. There was no real dispute in the bankruptcy court or the BAP concerning these burdens in the abstract. Rather, the parties disputed the relationship between a subchapter S corporation and a shareholder/employee under C.C.P. § 706.011, which was reflected in the disagreement about burdens of proof, production, and persuasion.

Cal.3d at 351, 256 Cal.Rptr. 543, 769 P.2d 399; *see also Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (listing similar factors). Reflecting on a trend in applying these factors, the California Supreme Court has noted that "[t]he modern tendency is to find employment when the work being done is an integral part of the regular business of the employer, and when the worker, relative to the employer, does not furnish an independent business or professional service." *S.G. Borello & Sons*, 48 Cal.3d at 357, 256 Cal.Rptr. 543, 769 P.2d 399 (quoting 1C Larson, *The Law of Workmen's Compensation* § 45.00, p. 8–174 (1986)).

██ Using a short-hand version of the standard test, C.C.P. § 706.011 defines an "employee" as "any individual who performs services subject to the right of the employer to control both what shall be done and how it shall be done."[4] We believe that under this definition it is enough that Carter was subject to the "right" of the corporation to control her performance. A test requiring actual control would not be well-designed for a person, like Carter, who claims to be an employee but who is also the sole shareholder of a subchapter S corporation. Because the would-be employee is also the sole shareholder, she is not controlled by the corporation in the same way as a person who is an employee (but not the sole shareholder) of a subchapter S corporation, or who is an employee of a non-subchapter S corporation. But even out-side the context of subchapter S corporations and bankruptcy exclusion statutes, California law does not insist on actual control. Under California law, "it is the right to control, not the exercise of the right, which bears on the status of the work arrangement." *S.G. Borello & Sons*, 48 Cal.3d at 357 n. 9, 256 Cal.Rptr. 543, 769 P.2d 399.[5]

On the record before us, it is clear that Carter is an employee of Krynicki within the meaning of § 706.011. That section requires that the individual performing services be "subject to the right of the employer to control both what shall be done and how it shall be done," and includes a "corporation" within the definition of employer without distinguishing among types of corporations. Among other things, Carter's performance engagements were made through Krynicki, which had the legal right to specify the services she performed and to control the manner in which she performed them; Carter was paid by Krynicki rather than by the establishments at which she performed; and expenses connected with Carter's performances, including payments to her agent, personal manager, and musicians, and payments for all professional equipment, were all paid by Krynicki rather than Carter.

Our holding that Carter is an employee is consistent with our earlier decision in *In re Cheng*, 943 F.2d 1114 (9th Cir.1991), in which we interpreted a related provision of California law exempting assets from the bankruptcy estate, C.C.P. § 704.115. The

---

**4.** The Legislative Committee Comment to § 706.011 provides: "This chapter deals only with the garnishment or withholding of earnings for services rendered in an employer-employee relationship. *See* Section 706.020. Subdivisions (b) and (c) [which define 'employee'] are based on the common law requirements for such relationship." C.C.P. § 706.011 (Legislative Committee Comment).

**5.** Many professionals are in a similar situation—doctors, lawyers, accountants—and they are ordinarily considered employees of their respective corporations, even if they are the sole shareholder. This court, applying the federal common law test of "employee" status, does not consider them independent contractors of their own corporations. *See, e.g., Idaho Ambucare Ctr., Inc. v. United States*, 57 F.3d 752, 754 (9th Cir.1995) (applying common law and holding that for federal "employee" taxes doctor was an employee of his own professional association but not an employee of out-patient facility contracting with doctor's professional association); *Spicer*, 918 F.2d at 94 (applying common law and holding that for federal "employee" taxes a shareholder accountant is employee and not an independent contractor of his own S corporation).

debtor in *Cheng* was the sole shareholder of a close corporation who claimed an exemption for a retirement plan. Under § 704.115(b), "[a]ll amounts held, controlled, or in process of distribution by a private retirement plan … are exempt." However, under § 704.115(e), "self-employed retirement plans" are only exempt "to the extent necessary" to provide for the debtor's retirement. The trustee in *Cheng* claimed the retirement plan at issue was a "self-employed retirement plan," and the bankruptcy court agreed because "Dr. Cheng managed and used the plan in a manner that makes it factually more like a self-employed retirement plan or an individual retirement account." *Cheng*, 943 F.2d at 1116 (quoting the bankruptcy court). This court reversed, holding that under California law a close corporation is not treated differently from other corporations:

> Although the legislative history indicates that the policy behind section 704.115(e) is to limit the exemption for plans that are controlled by one person, the statute says what it says, and it was improper for the bankruptcy court to read beyond it. If the California legislature intended to treat closely held corporations differently than large corporations, it could have done so explicitly.

*Id.* at 1117. Just like § 704.115 in *Cheng*, § 706.011 in this case does not distinguish among types of corporations. Dr. Cheng had a "private" rather than a "self-employed" retirement plan because the money was held by his corporation, even though Dr. Cheng was the de facto manager of the money. Similarly, Carter is an employee because she is subject to the right of control by her corporation, even though in real terms she is no more controlled by Krynicki than Dr. Cheng's retirement plan money was controlled by his corporation.

In holding that Carter was not an employee of Krynicki, the bankruptcy court may erroneously have focused on the relationship between Krynicki and the nightclubs and other establishments where Carter performed. For purposes of § 706.011, the proper focus is on the relationship between Krynicki and Carter. If Carter had contracted directly with nightclubs, she would have been acting as an independent contractor. But Carter structured the arrangement so that Krynicki, rather than she, contracted with nightclubs. Under this arrangement, Krynicki acted as an independent contractor and Carter as an employee of Krynicki.[6]

We therefore hold that the bankruptcy court and the BAP erred in finding that Carter was an independent contractor of her own corporation. But that does not end the analysis, for Carter is only entitled to an exemption if the payment constituted "earnings" within the meaning of § 706.011.

### 2. Did the $43,260.58 received by Carter constitute "earnings" under § 706.011?

■ Section 706.011 defines "earnings" as "compensation payable by an employer to an employee for personal services performed by such employee." Although there is no California case law that tells us specifically what counts as earnings under § 706.011,[7] it is at least clear that a primary criterion is that the payments must

---

6. For a comparable arrangement under California law, see Cal. Unemp. Ins.Code § 656. For purposes of unemployment compensation, there is a rebuttable presumption that an accountant is an independent contractor with her clients. But if that same accountant operates through her own subchapter S corporation, she is an employee of that corporation. *See Spicer*, 918 F.2d at 94.

7. In fact, there is only one California case that discusses C.C.P. § 706.011. *See Moses v. DeVersecy*, 157 Cal.App.3d 1071, 203 Cal.Rptr. 906 (1984). The court in *Moses* held that a self-employed CPA was not an "employee" of his clients for purposes of § 706.011. This holding has no bearing on Carter's situation because the disputed relationship is between Carter and Krynicki, not Carter and the various establishments where she performs.

be for "personal services performed." If that were the sole criterion, one might conclude that all income to Krynicki is potentially available to Carter as "earnings" since her personal services are Krynicki's sole source of income. But such an expansive definition of earnings does not correspond with economic reality. Before earnings are available to Carter, Krynicki must pay expenses, including salaries to other employees, equipment costs, and administrative expenses. Earnings to Carter are not Krynicki's gross income, but rather Krynicki's gross income less expenses, sometimes referred to as "net profits."

The trustee contends that net profits are not earnings, and seizes upon Carter's characterization of the $43,260.58 payment on April 3 as "net profits" as a basis for objecting to the claimed exemption. But the trustee's argument that net profits cannot be earnings is incorrect. For purposes of federal income tax, compensation to sole shareholder/employees of close and subchapter S corporations may be paid out of net profits in the form of earnings. *See Elliotts, Inc. v. C.I.R.,* 716 F.2d 1241, 1242, 1248–49 (9th Cir.1983) (holding that payment by a close corporation of 50 percent of net profits to sole shareholder/employee as compensation does not warrant a presumption of "disguised dividends"). Net profits under federal tax law can be either earnings or dividends when paid to a sole shareholder/employee, although "distinguishing between dividends and compensation for services received by a shareholder-employee of a closely held corporation" can sometimes be "troublesome." *Id.* at 1243.[8] But despite the occasional troublesome nature of the inquiry in the tax field, it is

clear that the term "net profits" is often used to refer to money paid out as earnings, and we find that Carter's use of the term in the context of a bankruptcy proceeding is in no way inconsistent with her having received the April 3 payment as earnings.

■ The problem for Carter, however, is that on the record before us there is little indication that the payment was actually earnings within the meaning of § 706.011. Indeed, there is some reason to suspect that it was not. Carter had estimated the gross income of Krynicki for all of 1995 as $115,000, yet on April 3 of that year she paid herself (before withholding) a lump sum of $78,714.00, which she has attempted to characterize as net profits or earnings. But when Carter made this payment to herself, the preparations for the bankruptcy filing were well underway. It is possible, perhaps even likely, that in the ordinary course of business, absent bankruptcy, some or all of that money either would have been paid as current expenses or kept in reserve against future expenses. Or the payment could have come from funds that had been retained in some earlier year. On the current record, we simply do not know.

■ Except to the degree that there is a correlation between the April 3 payment to Carter and the earnings Carter could legitimately have expected to receive from Krynicki during that period, the April 3 payment cannot qualify for the earnings exemption under § 706.011. Because the bankruptcy court erroneously found that Carter was not an "employee," it neither developed a record nor ruled on the fur-

---

8. The subchapter S form bypasses the usual disputes over "earnings" and "dividends." The subchapter S "pass through" taxation avoids "problems encountered by many closely held concerns in justifying salary payments to shareholder employees under a 'reasonableness' test so as to permit deductibility." William H. Painter, *Painter on Close Corporations* § 1.10.1 (3d ed.1997); *see Elliotts, Inc.,* 716 F.2d at 1244–45 (analyzing deductibility of employee compensation for a non-subchap-

ter S corporation). The earnings/dividends issue ordinarily arises for a subchapter S corporation in analyzing taxes on "wages," such as Social Security and unemployment taxes. *See Spicer,* 918 F.2d at 92; *Johnson v. Chater,* 127 F.3d 756, 758–59 (8th Cir.1997). However, when the issue is whether such "wage" taxes are owed, the taxpayer's motivation is to characterize the compensation as dividends rather than earnings. The motivation is precisely the opposite in Carter's situation.

ther question whether some or all of the April 3 check to Carter constituted "earnings." Remand is appropriate when "the bankruptcy court's factual findings are silent or ambiguous as to a material factual question." *In re Hall, Bayoutree Assoc., Ltd.,* 939 F.2d 802, 804–05 (9th Cir.1991). We therefore reverse and remand for a determination of whether Carter's April 3 check represented "earnings" under C.C.P. § 706.011.

REVERSED and REMANDED.