**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 26, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

In re:  MICHAEL GORDON; REBECCA GORDON,

　　　　Debtors.
_____

MICHAEL GORDON; REBECCA GORDON,

　　　　Appellants,

v.

DAVID V. WADSWORTH, as Chapter 7 Trustee,

　　　　Appellee.

No.  14-1257

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:13-CV-03196-RBJ)**

Philip C. Zimmerman (Mark A. Larson with him on the briefs), of Larson & Larimer, P.C., Greenwood Village, Colorado, for Appellants.

David V. Wadsworth, Denver, Colorado, for Appellee.

Before **HARTZ**, **GORSUCH**, and **MATHESON**, Circuit Judges.

**HARTZ,** Circuit Judge.

_____

Michael and Rebecca Gordon filed a voluntary petition for bankruptcy on April 16, 2013. They sought to treat $2,051 in a savings account as an exempt asset under the Colorado exemption for "[p]roperty . . . held in or payable from any pension or retirement plan or deferred compensation plan." Colo. Rev. Stat. § 13-54-102(1)(s). The Trustee objected on the ground that the exemption does not apply to funds once paid out from a retirement plan. The bankruptcy court sustained the Trustee's objection and denied the Gordons' motion for reconsideration. The United States District Court for the District of Colorado affirmed, and so do we. Our jurisdiction arises under 28 U.S.C. § 158(d)(1).

The few relevant facts are undisputed. The Gordons sought relief under Chapter 7 of the Bankruptcy Code. Their assets included a 401(k) retirement account with a $16,700 balance and a savings account holding $2,051. The funds in the savings account were the balance remaining from a lump-sum distribution from the retirement account. The Gordons had used these funds, which had not been commingled with money from other sources, to pay for living expenses.

Under Colorado law, Colorado residents who are in bankruptcy may invoke only the exemptions permitted under state law. _See id._ § 13-54-107; 11 U.S.C. § 522(b)(2); _Cohen v. Borgman_ (_In re Borgman_), 698 F.3d 1255, 1259 (10th Cir. 2012). "We review

2

*de novo* the bankruptcy and district courts' legal interpretation of the relevant Colorado statutes." *Kulp v. Zeman* (*In re Kulp*), 949 F.2d 1106, 1107 (10th Cir. 1991).

The Gordons argue that § 13-54-102(1)(s) protects the $2,051 balance remaining in their savings account because the amount represents "the remnants of a lump-sum distribution from a retirement plan" that had been "used to fund living expenses and [had] not been commingled with any other funds." Aplt. Br. at 5. They contend that the provision exempts distributions from a retirement plan in addition to assets "held in or payable from" a retirement plan. *Id.* (internal quotation marks omitted).

The provision, entitled "Property exempt," states:

(1)  The following property is exempt from levy and sale under writ of attachment or writ of execution:

. . . .

(s)  Property, including funds, held in or payable from any pension or retirement plan or deferred compensation plan, including those in which the debtor has received benefits or payments, has the present right to receive benefits or payments, or has the right to receive benefits or payments in the future and including pensions or plans which qualify under the federal "Employee Retirement Income Security Act of 1974" [ERISA], as amended, as an employee pension benefit plan, as defined in 29 U.S.C. sec. 1002, any individual retirement account, as defined in 26 U.S.C. sec. 408, any Roth individual retirement account, as defined in 26 U.S.C. sec. 408A, and any plan, as defined in 26 U.S.C. sec. 401, and as these plans may be amended from time to time[.]

Colo. Rev. Stat. § 13-54-102(1)(s).  The Colorado courts have not addressed whether the exemption protects distributions from a retirement plan.  We must "ascertain and give effect to the intent of the legislature, and that task begins with the language of the statute

3

itself." *In re Borgman*, 698 F.3d at 1260 (internal quotation marks omitted). We conclude that § 13-54-102(1)(s) does not protect funds already paid from a retirement plan.

The straightforward meaning of the provision is that it exempts property held in or payable from a debtor's pension or retirement plan or deferred-compensation plan (we will refer to all such plans as simply retirement plans) even when the property is merely "funds." Colo. Rev. Stat. § 13-54-102(1)(s). A plan qualifies if it satisfies one of three conditions: (1) the debtor has received benefits or payments from the plan, (2) the debtor has the present right to receive benefits or payments, or (3) the debtor has the right to receive benefits or payments in the future. *See id.* (For our purposes it is not necessary to determine whether plans not satisfying one of the three conditions also qualify, although one would think that any retirement plan satisfies at least one of the conditions.[1]) Further, the plan may be a plan covered by one of several federal statutes. *See id.* (Again, we need not consider whether other plans would also qualify.)

The point of contention in this appeal is whether the exemption applies to money distributed from a retirement plan or is limited to assets "held in or payable from" a retirement plan. The obvious answer is that the exemption is limited, to quote the statute, to "[p]roperty, including funds, held in or payable from any . . . retirement plan." *Id.* But

---

[1] If the three conditions exhaust all possibilities with respect to retirement plans, one might say that listing all three is superfluous—that it was enough to say "any retirement plan." But the list ensures that a court will not find a reason to exclude, say, plans that have already distributed some benefits.

the Gordons make a remarkable argument that the statutory language says that distributed funds are also exempt. The argument focuses on the words "benefits or payments," which appear three times in the clause describing the types of retirement plans that qualify for the exemption. As best we can understand it, the argument is that these words have significance independent of other language in the statute and confer an exemption for benefits and payments distributed from retirement plans. Their brief asserts that the clause's "references to 'benefits or payments' introduce a new asset type different from those referenced in [the other clauses in the statute]." Aplt. Br. at 14.

To respond to the argument, it is helpful to quote the statutory provision through the first appearance of the words relied on by the Gordons. The exemption extends to: "Property, including funds, held in or payable from any pension or retirement plan or deferred compensation plan, including those in which the debtor has received *benefits or payments* . . . ." Colo. Rev. Stat. § 13-54-102(1)(s) (emphasis added). We can discern no rational interpretation of this language that gives the words "benefits or payments" independent significance as exempted property. The words are clearly only part of a description of a type of retirement plan—one "in which the debtor has received benefits or payments"—that qualifies for the exemption. And the Gordons offer no reading of the language of the statute to support their view, other than to quote the words "benefits or payments" in isolation. Perhaps the Gordons are saying that the phrase "including those in which the debtor has received benefits or payments" modifies the word "funds" in the opening language "Property, including funds, . . . ." But we think that would be an

5

unacceptably strained construction of the language. We cannot ignore the words between the opening language and the clause—the words "held in or payable from any [retirement plan]."

The Gordons' opening brief reminds us that Colorado liberally interprets statutes granting exemptions from creditor actions. *See Roup v. Commercial Research, LLC*, No. 14SC50, 2015 WL 3452615, at *2 (Colo. June 1, 2015). But even a liberal construction must find support in the statutory text. *See id.* And there is no support in the text for the Gordons' argument that § 13-54-102(1)(s) grants an exemption for money distributed to the debtor from a retirement plan.

The Gordons also appear to argue that even if the exemption mentions only retirement plans, it still protects *use* of the plan assets—that is, use of the distributions from the plan. They say:

> [E]xcept for a very limited number of instances, Colorado law has not limited how a debtor may use exempt property. In the absence of express statutory limitations, liberality in the interpretation of Colorado's exemption laws precludes a court from inferring limitations that would restrict or defeat the purpose of the exemption. The retirement exemption's language does not suggest that the General Assembly intended any restrictions of a debtor's use of distributions of retirement assets.

Aplt. Br. at 33–34 (citations omitted). In their reply brief, they assert:

> [The words "held in or payable from"] by themselves do not contain any indication that the General Assembly intended the exemption to protect "only" retirement assets "held in or payable from" a pension or plan . . . , or that the exemption's protection is "for so long as" the assets remain "held in or payable from" a pension or plan. Even a cursory review of the state's exemption laws makes clear that the General Assembly knows how to draft exemption provisions using restrictive words of limitation. Thus, the

6

absence of words of limitation, like "only" or "for so long as" with respect to "held in or payable from," is an indication that the General Assembly did not intend those words to have the narrow meaning advocated by the trustee.

Reply Br. at 8–9.

This argument fails. Contrary to the Gordons' contention, the practice of the Colorado legislature is to be explicit when proceeds are exempt. For example, § 13-54-102(1) protects the "proceeds of" life-insurance policies, *id.* § 102(1)(l)(I)(B); fire- or casualty-insurance policies, *see id.* § 102(1)(m); and personal-injury damages, *see id.* § 102(1)(n). Most striking is that the legislature was quite explicit in providing for military pensions the specific protection sought by the Gordons for their retirement money. Section 102(1)(h) exempts "*all money received* by any person as a pension, compensation, or allowance for any purpose on account or arising out of the services of such person as a member of the armed forces of the United States . . . *whether in the actual possession of the recipient thereof or deposited or loaned by him*." (emphasis added). The inference we draw from the legislature's drafting practices is not the one the Gordons would draw but just the opposite: If the legislature intended to exempt the money received by the Gordons from their retirement plan, the legislature knew precisely how to say that.

The Gordons next argue that legislative history supports their interpretation. They state that the language of § 102(1)(s) should "be interpreted consistent with the construction given the deleted language . . . in the [previous] garnishment exemption

7

[that] was widely considered to protect retirement benefits received by a debtor." Aplt. Br. at 18–19. We are not persuaded. The prior garnishment exemption used quite different language from the present exemption for pension plans. The superseded language exempted from garnishment 75% of "disposable earnings," Colo. Rev. Stat. § 13-54-104(2)(a) (1990) (amended 1991), and defined "earnings" to include "compensation paid or payable for personal services [including] avails of any pension . . . benefits," *id.* § 13-54-104(1)(b). The term "avails of [pension benefits]" was defined as "profits or proceeds in any pension . . . plan, including those in which the debtor has received benefits or payments . . . ." *Id.* § 13-54-104(1.1) (repealed 1991). No matter how those earlier provisions might be construed, the Colorado legislature has changed both the statutory structure and terminology for the present exemption. Rather than indicating legislative intent to preserve the accepted meaning of the prior language, this language change is more likely to indicate legislative intent to change the law. Although we appreciate that on occasion a legislature may amend statutory language to clarify a point, one can hardly read the present language as *clarifying* that distributions from retirement plans are exempt. The words "held in or payable from" a retirement plan imply the contrary—that the exemption applies only so long as the *plan* retains the assets.

Finally, the Gordons assert that our interpretation would "require a disregard for the clause's operation with the broader Colorado exemption scheme." Aplt. Br. at 27. They point to two other sections of Colorado's exemption statutes. First, § 13-54-102(3) provides that "[n]otwithstanding [§ 102(1)(s)], any pension or retirement benefit or

8

payment shall be subject to attachment or levy in satisfaction of a judgment taken for arrearages for child support or for child support debt, subject to the limitations contained in section 13-54-104." (For child support, the maximum amount of the payment that can be garnished or levied is 65%. *See* § 13-54-104(3)(b)(II)). The Gordons argue that our interpretation "renders subsection 102(3) meaningless because if retirement distributions are not exempt under paragraph 102(1)(s), there is nothing for the subsection to 'notwithstand' under the paragraph—the holder of a claim for unpaid child support, like every other creditor, would be able to collect against 100% of the benefits and payments received by the debtor." Aplt. Br. at 27. Second, for purposes of collection of child support, Colorado's definition of "[e]arnings" subject to garnishment includes "pension or retirement benefits or payments." § 13-54-104(1)(b)(II)(B) (internal quotation marks omitted). According to the Gordons, our interpretation "would render the augmentation of 'earnings' for retirement benefits or payments under subparagraph 104(1)(b)(II) of the garnishment exemption unnecessary for the holders of unpaid child support claims since, again, these claimants would otherwise be able to collect against 100% of the benefits and payments received by a debtor." Aplt. Br. at 27–28.

But §§ 13-54-102(3) and 13-54-104(1)(b)(II)(B) have a sensible meaning consistent with our construction of the exemption statutes. What § 13-54-102(s) does is "exempt from levy and sale under writ of attachment or writ of execution," § 13-54-102(1), the property in a retirement plan. It restricts efforts to collect on a debt by going after the plan. It says nothing about what a creditor can do to collect from

9

distributions to the debtors once they have left the plan.  There is a difference between collecting from the plan and collecting out of distributions from the plan.  *See Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1082 (10th Cir. 1994) ("Following distribution of benefits to the plan participant or beneficiary, a creditor no longer has a right against the plan." (emphasis omitted)).  But *notwithstanding* this general exemption of the plan from creditor actions, one who is owed support obligations by the debtor can, under §§ 13-54-102(3) and 13-54-104(1)(b)(II)(B), go after the plan by garnishing the plan to obtain a percentage (up to 65%) of a benefit or payment to be made by the plan to the beneficiary.  Absent these special child-support provisions, one owed child support could not take any action (such as garnishment) against a retirement plan to collect support that is due.  The child-support creditor would have to wait to go after plan distributions once they are out of the plan's control.

Being unpersuaded by the Gordons' arguments, we AFFIRM the judgment of the district court.  We DENY the Gordons' motion to certify questions of law to the Colorado Supreme Court.