Honorable Mike K. Nakagawa, United States Bankruptcy Judge
On August 15, 2018, the court heard the Objection to Debtor's Claimed Exemptions *519 Pursuant to 11 U.S.C. § 522(l) and Federal Rule of Bankruptcy Procedure 4003 ("Objection") brought on behalf of Chapter 7 panel trustee, Shelley D. Krohn ("Trustee"). The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.
BACKGROUND
On May 10, 2018, a voluntary Chapter 7 bankruptcy petition was filed by Lou Shamoon Gagow ("Debtor") along with his schedules of assets and liabilities ("Schedules"), his statement of financial affairs ("SOFA"), and other required information. (ECF No. 1). On the same date, a notice of the Chapter 7 filing was issued scheduling a meeting of creditors for June 13, 2018, and notifying creditors of the Trustee's appointment. (ECF No. 7). On the Debtor's initial Schedule "A/B," Debtor listed cash in the amount of $25,000 ("Cash"), the source of which is identified as an "IRA Withdraw due to IRS levy." Debtor separately listed a "checking account ending #9309" in the amount of $508.91 maintained at Wells Fargo Bank ("WFB Checking Account"). Debtor also separately listed an "IRA ending 0412" in the amount of $95.00 maintained at Edward Jones ("Edward Jones IRA").[2] Debtor further listed a 10% ownership interest in an entity identified as "4th Junction, LLC." He described the value of that ownership interest in 4th Junction, LLC ("LLC") as "Unknown."
On his initial Schedule "C," Debtor claimed the $25,000 in Cash as exempt under NRS 21.090(1)(r). He also claimed the amount in the WFB Checking Account as exempt under NRS 21.090(1)(g) and 21.090(1)(z). Debtor also claimed the amount in the Edward Jones IRA as exempt under NRS 21.090(1)(r). He also claimed the amount of $10,000 for the LLC as exempt under NRS 21.090(1)(d).
On July 11, 2018, Debtor filed an amended Schedule "C," in which he claimed an exemption of the Cash in the amount of $15,827.23 under NRS 21.090(1)(r), and an additional exemption of the Cash in the amount of $9,172.77 under NRS 21.090(1)(z). (ECF No. 23). No changes were made to the exemptions claimed for the WFB Checking Account, the Edward Jones IRA, and the LLC.
On July 13, 2018, the Trustee filed the instant Objection with respect to the Debtor's claimed exemptions in both the Cash and in the LLC. (ECF No. 24). The Objection is supported by the Declaration of Shelley D. Krohn ("Krohn Declaration"). (ECF No. 25).
On August 1, 2018, the Debtor filed a further amended Schedule "C" wherein he now claims an exemption in the Cash in the amount of $15,827.23 under NRS 21.090(1)(r), and an additional exemption of the Cash in the amount of $9,172.77 under NRS 21.090(1)(z) or in the alternative NRS 21.090(1)(r). (ECF No. 32). No changes were made to the exemptions claimed for the WFB Checking Account or the Edward Jones IRA. However, the Debtor's amended Schedule "C" also claims an exemption in an unknown amount for the *520 LLC under NRS 21.090(1)(bb), instead of under NRS 21.090(1)(d). On the same date, the Debtor filed his Response in Opposition to Debtor's Claimed Exemptions Pursuant to 11 U.S.C. § 522(l) and Federal Rule of Bankruptcy Procedure 4003 ("Opposition"), along with the supporting Declaration of Lou Shamoon Gagow ("Gagow Declaration"). (ECF Nos. 33 and 34).
On August 8, 2018, the Trustee filed her Reply to Response in Opposition to Debtor's Claimed Exemptions Pursuant to 11 U.S.C. § 522(l) and Federal Rule of Bankruptcy Procedure 4003, along with the supporting Declaration of Jacob L. Houmand, Esq. ("Houmand Declaration"). (ECF Nos. 36 and 37).
On August 14, 2018, an Order of Discharge was entered. (ECF No. 39).
DISCUSSION
Exemptions are intended to preserve property interests essential for an individual to survive. An individual who is subject to collection proceedings is able to retain such essential items by claiming exemptions. See In re Bower, 234 B.R. 109, 112 (Bankr. D. Nev. 1999) ("The historical purpose of exemptions in Nevada is to protect a debtor by permitting him to retain the basic necessities of life so that he and his family will not be left destitute."). See also Weinstein v. Fox (In re Fox), 129 Nev. 377, 302 P.3d 1137, 1139 (2013) ("The legislative purpose of NRS 21.090 is 'to secure to the debtor the necessary means of gaining a livelihood, while doing as little injury as possible to the creditor.' "). The list of items considered to be essential varies widely from state to state. See generally BANKRUPTCY EXEMPTION MANUAL , Appendix B (William Houston Brown, Lawrence R. Ahern III, and Nancy Fraas MacLean, eds., 2018 ed. update). When individuals file for bankruptcy protection, their property interests become property of their bankruptcy estate under Section 541(a).See Rousey v. Jacoway, 544 U.S. 320, 325-26, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005).
Section 522(b)(1) authorizes an individual debtor to exempt property of the bankruptcy estate. Section 522(d) sets forth a variety of specific exemptions that may be claimed in bankruptcy cases, but Section 522(b)(2) allows individual States to "opt out" of those exemptions so that their residents may claim only the exemptions provided under state law and non-bankruptcy federal law. Under NRS 21.090(3), Nevada has "opted out" of the federal bankruptcy exemptions. See Leavitt v. Alexander (In re Alexander), 472 B.R. 815, 821 (9th Cir. BAP 2012).
Section 522(l) requires an individual debtor to file a list of the property he or she claims as exempt. FRBP 4003(a) requires the list to be included in the schedules of information that the debtor is required to file under Section 521(a)(1)(B)(i). Section 522(l) also specifically provides that "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." The official form on which the list of exempt property must appear is Schedule "C."
Under FRBP 4003(b)(1), a party in interest must object, if at all, to a debtor's claim of exemptions within 30 days after conclusion of the meeting of creditors. Failure to timely object bars any subsequent challenge to the validity of the claimed exemption, see Taylor v. Freeland & Kronz, 503 U.S. 638, 642, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992),[3] except to the *521 extent the debtor subsequently seeks relief under Section 522(f). See FED.R.BANKR.P. 4003(d).
Under FRBP 4003(c), the objecting party has the burden of proving that an exemption is not properly claimed. See, e.g., In re Mailatyar, 2018 WL 3814293, at *4 (Bankr. D. Ariz. Aug. 8, 2018) (sustaining and overruling objections to homestead claims for two separate residences). In Diener v. McBeth (In re Diener), 483 B.R. 196 (9th Cir. BAP 2012), the bankruptcy appellate panel for this circuit explained the allocations of the burdens of production and persuasion on an exemption objection as follows:
A claimed exemption is " 'presumptively valid.' " Tyner v. Nicholson (In re Nicholson), 435 B.R. 622, 630 (9th Cir. BAP 2010) (citing Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 n. 3 (9th Cir.1999) ). "[I]f a party in interest timely objects, 'the objecting party has the burden of proving that the exemptions are not properly claimed.' " Id. (quoting Rule 4003(c) ). Initially, this means that the objecting party has the burden of production and the burden of persuasion. In re Carter, 182 F.3d at 1029 n. 3. The objecting party must produce evidence to rebut the presumptively valid exemption. Id. Once rebutted, the burden of production then shifts to the debtor to come forward with unequivocal evidence that the exemption is proper. Id. The burden of persuasion, however, always remains with the objecting party. Id.
483 B.R. at 203.[4] The standard of proof is by a preponderance of the evidence. See Leavitt v. Alexander (In re Alexander), 472 B.R. 815, 821 (9th Cir. BAP 2012).
In the present case, the meeting of creditors was concluded on June 13, 2018, and the Trustee timely filed the instant Objection. The Trustee maintains that none of the Nevada statutory provisions asserted by the Debtor support the exemptions claimed in the Cash and the LLC. For the reasons set forth below, the court agrees with the Trustee and will sustain the Objection.
1. The Cash.
Debtor attests that he withdrew funds from the Edward Jones IRA on February 13, 2018, and deposited the net amount of $21,906.64 into the WFB Checking Account. See Gagow Declaration at ¶ 6.[5] See also Krohn Declaration at ¶ 10 and Exhibit "1" thereto. Debtor asserts that the Cash now sitting in the WFB Checking Account is exempt pursuant to *522 NRS 21.090(1)(r)(1). That Nevada statute provides an exemption of:
money, not exceeding $1,000,000 in present value, held in : (1) an individual retirement arrangement which conforms with or is maintained pursuant to the applicable limitations and requirements of section 408 or 408A of the Internal Revenue Code, 26 U.S.C. §§ 408 and 408A, including, without limitation, an inherited individual retirement arrangement.
Nev.Rev.Stat. 21.090(1)(r) (emphasis added).[6]
Here, the Trustee does not object to the Debtor's exemption under NRS 21.090(1)(r) of the funds remaining in the Edward Jones IRA. The amount of $95.00 apparently is still held in that account, and no one questions whether the Edward Jones IRA complies with the applicable provisions of the Internal Revenue Code. Compare Rousey, 544 U.S. at 322-323, 125 S.Ct. 1561. Nor does any party in interest assert that if the Cash had not been withdrawn by the Debtor and was still held in the Edward Jones IRA, an objection would not have been asserted by the Trustee. Although the Debtor's explanation that the Cash resulted from an "IRA Withdraw due to IRS levy" raises more questions than it answers,[7] no one forced him to engage in what might be described as "reverse exemption planning."[8]
*523 In this instance, the Nevada statute expressly refers to money "held in" an individual retirement arrangement[9] rather than to money "from" or "for" an individual retirement arrangement.[10] Debtor maintains that the exemption of the retirement funds should not be lost simply because the funds have been accessed by the individual and are no longer held in the retirement account. See Opposition at 6:7 to 8:25. He repeatedly argues that exemptions in Nevada are "liberally and beneficially construed." Id. at 6:7-9, 8:24-25, and 10:10-11, citing, e.g., Jackman v. Nance, 109 Nev. 716, 718, 857 P.2d 7 (Nev. 1993). Debtor cites no decisions, however, by courts in Nevada or other jurisdictions interpreting NRS 21.090(1)(r) to apply to monies that are no longer held in an individual retirement account.[11]
While the Debtor's argument ignores the plain language of the statute,[12] it also ignores that the Nevada legislature *524 has made other exemptions available to protect the assets of a judgment debtor, including funds withdrawn from a retirement account as well as the proceeds of such funds. The purpose of allowing individuals to exempt retirement accounts and pension funds is to ensure that funds are "set aside for the day an individual stops working." Clark, 134 S.Ct. at 2246. Whether retirement occurs voluntarily or involuntarily, however, it does not come cheap and living expenses still must be met even though the debtor no longer has income from employment. Fortunately, the Nevada exemptions generally do not distinguish between individuals who are working and those who are not.[13] Once an individual stops working, nothing prevents the debtor from using his retirement funds, not surprisingly, to pay his ordinary living expenses, or to acquire other exempt property.[14] For example, a debtor can acquire a personal dwelling as a homestead or increase the equity in an existing dwelling that also would be subject to the $550,000 homestead exemption under NRS 115.010(2). Or, a debtor can acquire a vehicle or increase the equity in an existing vehicle that also would be subject to the $15,000 vehicle exemption under NRS 21.090(1)(f). Moreover, a Nevada debtor can rely on the recently increased "wildcard" exemption under NRS 21.090(1)(z) to protect up to $10,000 of cash withdrawn from a retirement arrangement, or any other interest in personal property.[15] Under Nevada's generous exemption scheme, the prospect of a judgment creditor swooping down on any cash withdrawn from an individual retirement account is more apocryphal than real.[16] It is even less realistic in a bankruptcy context when the individual debtor also would be protected from such acts by the discharge injunction.[17] In the instant case, the Debtor received *525 his discharge on August 14, 2018, and any funds he could have withdrawn from the Edward Jones IRA would not have been subject to execution by his creditors.[18]
Under these circumstances, the court concludes that the exemption provided by NRS 21.090(1)(r)(1) does not apply to the Cash that the Debtor withdrew from the Edward Jones IRA.
2. The LLC.
Debtor also attests that the LLC is a California limited liability company in which he holds a ten percent membership interest. See Gagow Declaration at ¶¶ 9 and 10; Krohn Declaration at ¶ 11 and Exhibit "2" thereto. He attests that the LLC no longer operates, but receives income from collection of contracts for prior services. Id. at ¶ 10. As receivables are collected, Debtor apparently receives "non-passive income" from the LLC. Id. at ¶¶ 11-13. Debtor asserts that the monies received from the LLC are exempt pursuant to NRS 21.090(1)(bb). That Nevada statute provides an exemption for "[s]tock of a corporation described in subsection 2 of NRS 78.746 except as set forth in that section." NRS 21.090(1)(bb) (emphasis added).
NRS 78.746 is part of Chapter 78 of the Nevada Revised Statutes that governs Private Corporations in the State of Nevada. NRS 78.030 through NRS 78.055 specify the requirements for the formation of a private corporation in Nevada. Under NRS 78.030 (1 and 2), articles of incorporation must be filed with the Office of the Secretary of State of Nevada, and must contain the information specified in NRS 78.035. Under NRS 78.050(1), a corporation comes into existence only upon the filing of articles of incorporation pursuant to NRS 78.030.
NRS 78.745 through NRS 78.752 govern suits brought against private corporations, as well as their directors, officers, employees, agents, and stockholders. NRS 78.746 addresses actions by a judgment creditor of a stockholder to charge the stock of a private corporation for payment of an unsatisfied judgment. Subsection 2 of NRS 78.746 contains certain limitations on the execution of a judgment against the corporate stock held by the shareholder, but the provisions of part (c) of subsection 2 makes clear that the statute only applies to a corporation that (1) has fewer than 100 stockholders at any time, (2) is not publicly traded, and (3) is not a professional corporation. See Nev.Rev.Stat. 78.746(2)(c) (1, 2 and 3).
*526 In this case, the LLC is not a corporation, but is a limited liability company. Limited liability companies have members, but not stockholders. In certain circumstances, limited liability companies may be treated as corporations, see, e.g., AE Rest. Assocs., LLC v. Giampietro (In re Giampietro), 317 B.R. 841 (Bankr. D. Nev. 2004) (application of corporate alter ego doctrine to limited liability company), but the formation and regulation of limited liability companies typically are governed by separate statutory provisions. See, e.g., NRS 86.011 through 86.590 [limited liability companies]. Because NRS 21.090(1)(bb) refers only to stock of a corporation described in Chapter 78 of the Nevada Revised Statutes, rather than a membership interest in a limited liability company described in Chapter 86 of the Nevada Revised Statutes, the Debtor's ten percent membership interest in the LLC is not encompassed by the language of the exemption statute.
Moreover, Chapter 78 of the Nevada Revised Statutes governs the formation of private corporations in the State of Nevada. There is no dispute that the LLC was formed in California, presumably in compliance with California law. Limited liability companies formed in another state are permitted to do business in Nevada, see Nev.Rev.Stat. 86.5463 and Nev.Rev.Stat. 86.5483, but are required to register with the Nevada Secretary of State and comply with the statutory requirements governing foreign limited liability companies. Likewise, corporations formed in another state are permitted to do business in Nevada, see Nev.Rev.Stat. 80.010 through Nev.Rev.Stat. 80.290, but also are required to register with the Nevada Secretary of State and comply with the statutory requirements governing foreign corporations.[19] Permission to do business in Nevada, however, does not transform a foreign fictitious business entity into a Nevada entity. The express language of NRS 21.090(1)(bb) is limited to "stock of a corporation described in subsection 2 of NRS 78.746." That description only embodies corporations formed in Nevada.
Under these circumstances, the court is not persuaded by the Debtor that it should essentially re-write NRS 21.090(1)(bb) to apply to a limited liability company instead of a corporation, and to a California fictitious entity rather than a Nevada fictitious entity. As the circuit court observed in Gordon, see note 11, supra, "even a liberal construction [of an exemption] must find support in the statutory text."
Based on the foregoing, the court concludes that the Trustee has met her burden of proving that the exemption of the Cash under NRS 21.090(1)(r)(1) is not properly claimed. Additionally, the Trustee has met her burden of proving that the exemption of the LLC under NRS 21.090(1)(bb) is not properly claimed. To the extent that any portion of the wildcard under NRS 21.090(1)(z) remains available, however, the Debtor may claim that portion with respect to the Cash or the LLC.[20]
IT IS THEREFORE ORDERED that the Objection to Debtor's Claimed Exemptions Pursuant to 11 U.S.C. § 522(l) and *527 Federal Rule of Bankruptcy Procedure 4003, brought by Shelley D. Krohn, Docket No. 24, be, and the same hereby is, SUSTAINED .
IT IS FURTHER ORDERED that the Debtor's above-described claim of exemption to Cash in the amount of $25,000 as well as his claim of exemption to the ten percent ownership interest in 4th Junction, LLC, is limited to any remaining amounts available under NRS 21.090(1)(z).

On question 20 of the SOFA, Debtor lists all of the financial accounts that he closed within one year of the bankruptcy. No accounts maintained at Edward Jones or at Wells Fargo Bank were closed. Thus, only the WFB Checking Account and the Edward Jones IRA would exist for purposes of this bankruptcy proceeding.

The Supreme Court's later decision in Schwab v. Reilly, 560 U.S. 770, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010) did not alter the requirement under FRBP 4003(b)(1) that objections challenging the validity or amount of claimed exemptions must be filed timely.

The Trustee argues that when the exemption laws of a debtor's state of residence must be applied, state law may require that the debtor bears the burden of proof on the validity of the exemption claim. See Objection at 5:25 to 6:23, citing, e.g., In re Pashenee, 531 B.R. 834, 838-39 (Bank.E.D. Cal. 2015) and Nev.Rev.Stat. 21.112(6). In the present case, there are no material facts in dispute and the determination of applicable state law is the same regardless of how the burden of persuasion is allocated. Thus, the court concludes that the Objection must be sustained irrespective of which party bears the burden of proof.

It is not clear why the Cash amount set forth in the Debtor's Schedules "B" and "C" is stated to be $25,000, rather than $21,906.64. Perhaps the lower figure is net of any federal income taxes, but no explanation is apparent from the evidence provided to the court. Moreover, because the Debtor treated the WFB Checking Account separately by claiming other exemptions under NRS 21.090(1)(g) and NRS 21.090(1)(z), it was inaccurate to describe the Cash as being anything other than a deposit of money in that same account. Either way, the Debtor's testimony establishes that the funds in question were not held in the Edward Jones IRA as of the commencement of the case.

The last eight words of the statute apparently were added by the Nevada legislature in 2017 in response to the Supreme Court's decision in Clark v. Rameker, 573 U.S. 122, 134 S.Ct. 2242, 189 L.Ed.2d 157 (2014). In Clark, the Court concluded funds from an individual retirement account obtained by a debtor through inheritance from a parent could not be claimed as exempt under Section 522(d)(12). Under that provision, debtors eligible to claim the federal bankruptcy exemptions can protect "retirement funds" to the extent the funds are exempt from taxation under provisions of the Internal Revenue Code. 11 U.S.C. § 522(d)(12). The Court held that retirement funds inherited by a debtor were not accumulated by the debtor for retirement purposes and therefore were not necessary to a debtor's fresh start. 134 S.Ct. at 2248.

Debtor's Schedule "E/F" discloses that he is the subject of numerous federal tax liens for previous tax years. If he withdrew funds from his Edward Jones IRA in order to avoid a levy by the Internal Revenue Service, it might be hard to explain why such conduct would not be grounds for denial of a Chapter 7 discharge under Section 727(a)(2). That section provides that the "court shall grant the debtor a discharge, unless...the debtor, with intent to hinder, delay, or defraud a creditor...has transferred...property of the debtor, within one year before the date of the filing of the petition..." A finding of intent to defraud is not required; an intent to only hinder or delay a creditor is sufficient. See Cain v. Rawson (Matter of Rawson), 734 Fed.Appx. 507, 508-09 (9th Cir. Aug. 14, 2018). Compare First Leasing Co. v. McGalliard (In re McGalliard), 183 B.R. 726 (Bankr. M.D. N.C. 1995) (debtor's use of retirement funds to pay Internal Revenue Service instead of judgment creditor resulted in a denial of discharge under Section 727(a)(2) ). In the Debtor's case, however, no objection to his discharge was raised, and the Chapter 7 discharge was granted on August 14, 2018.

Within limits, a debtor is permitted to engage in "exemption planning" by converting otherwise non-exempt assets into exempt assets before seeking bankruptcy protection. Congress acknowledged this practice when it enacted the Bankruptcy Code. Both the House and Senate Reports regarding the debtor's right to claim exemptions state: "As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6317; S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5862 (emphasis added). When the conversion of non-exempt assets to exempt assets is found to be excessive, however, the individual may win the exemption battle but lose the war through denial of a bankruptcy discharge. See, e.g., Norwest Bank Nebraska, N.A. v. Tveten (In re Tveten ), 848 F.2d 871 (8th Cir. 1988) (pre-bankruptcy conversion of $700,000 in non-exempt property to an exemption available under Minnesota law resulted in denial of discharge under Section 727(a)(2) as a transfer with intent to hinder, delay, or defraud creditors). In the present case, the Debtor appears to have converted exempt property, i.e., the monies held in the Edward Jones IRA, into non-exempt property, i.e., the Cash later deposited into the WFB Checking Account.

Other state exemption statutes are not limited to money held in an individual retirement account, but use broader language. For example, Ohio's exemption protects a debtor's "rights or interest in the assets held in, or to directly or indirectly receive any payment or benefit under, any individual retirement account." See In re Karn, 2014 WL 3844829, at *3 (Bankr. N.D. Ohio Aug. 4, 2014). The language chosen by the Nevada legislature limits the exemption to money held in an individual retirement arrangement.

NRS 21.090(1)(r) also does not refer to the "right to receive" money held in an individual retirement arrangement. Many courts have recognized that an exemption of a right to receive a payment or benefit is extinguished if the payment or benefit was received prepetition. See, e.g., In re Nothdurft, 521 B.R. 640 (Bankr. C.D. Ill. 2014) (denial of exemption of right to receive a social security payment where the payments were received prior to commencement of Chapter 7 proceeding); Sosne v. Dittmaier (In re Dittmaier), 806 F.3d 987 (8th Cir. 2015) (denial of exemption of an earned income tax credit claimed by an individual debtor as a right to receive a public assistance benefit).

Colorado has an exemption for "Property, including funds, held in or payable from any pension or retirement plan..., including those in which the debtor has received benefits or payments,...including...any individual retirement account, as defined in 26 U.S.C. sec. 408..." Colo.Rev.Stat. § 13-54-102(1)(s) (emphasis added). In Wadsworth v. Gordon (In re Gordon), 791 F.3d 1182 (10th Cir. 2015), the circuit court concluded that funds previously withdrawn from an otherwise exempt individual retirement account and deposited into a saving account had lost their exempt status. Addressing an argument similar to that raised by the Debtor in the present case, the circuit panel observed: "The [debtors'] opening brief reminds us that Colorado liberally interprets statutes granting exemptions from creditor actions...But even a liberal construction must find support in the statutory text...And there is no support in the text for the [debtors'] argument that § 13-54-102(1)(s) grants an exemption for money distributed to the debtor from a retirement plan." 791 F.3d at 1185-1186. Contrary to the debtors' suggestions, the circuit panel also concluded: "If the [Colorado] legislature intended to exempt the money received by the [debtors] from their retirement plan, the legislature knew precisely how to say that." Id. at 1186.

Because the language of NRS 21.090(1)(r) is plain, it is unnecessary to consider the snippets of legislative history offered by the Trustee. See Houmand Declaration at ¶¶ 4 and 5, and Exhibits "1" and "2" attached thereto.

Some of the exemptions, of course, are designed to protect the income or benefits obtained by a judgment debtor who is currently employed or otherwise not retired. See, e.g., NRS 21.090(1)(g) [weekly disposable earnings]; NRS 21.090(1)(w) [lost future earnings]; NRS 21.090(1)(gg) [worker's compensation]; NRS 21.090(1)(hh) [unemployment compensation]; NRS 21.090(1)(jj) [vocational rehabilitation payments].

In the present case, the disputed funds already were withdrawn from the Edward Jones IRA before the Debtor filed his Chapter 7 petition. Even if he is allowed his claim of exemption, the Debtor has neither identified nor suggested any restrictions on the use of those funds now on deposit in the WFB Checking Account.

Effective October 1, 2017, NRS 21.090(1)(z) was amended by Nevada Assembly Bill 314 to increase the wildcard exemption from $1,000 to $10,000 in value of any personal property belonging to the judgment debtor. Once a judgment debtor receives a bankruptcy discharge and the case is closed, the pre-bankruptcy assets of the estate are either exempted by the debtor or administratively abandoned under Section 554(c). Upon entry of the discharge, any judgment on the pre-bankruptcy debt as a personal liability of the debtor is void under Section 524(a)(1). Additionally, creditors are barred by the discharge injunction under Section 524(a)(2) from attempting to collect their pre-bankruptcy debts as a personal liability of the debtor. Having received a financial fresh start through bankruptcy, a debtor can assert any exemptions allowed by state or federal law in response to collection efforts by post-bankruptcy creditors.

The prospect of a judgment creditor physically removing cash from the judgment debtor's possession without a breach of the peace is unlikely.

In Clark, Justice Sotomayor observed that "the possibility that some investors may use their inherited IRAs for retirement purposes does not mean that inherited IRAs bear the defining characteristics of retirement funds. Were it any other way, money in an ordinary checking account (or, for that matter, an envelope of $20 bills) would also amount to 'retirement funds' because it is possible for an owner to use those funds for retirement." 134 S.Ct. at 2250 (emphasis added). In the present case, the Debtor pulled at least $21,906.64 from his Edward Jones IRA and makes no suggestion that the funds will be used for retirement purposes. Compare In re Berdecia-Rodriguez, 2016 WL 5763378, at *3 (Bankr. D. Mont. Sep. 30, 2016) (funds withdrawn from an exempt Health Savings Account remained exempt under Montana law so long as the Chapter 13 debtor applied the funds for qualified medical expenses).

As previously mentioned at note 6, supra, Section 522(d)(12) creates a federal bankruptcy exemption for retirement funds. Section 522(b)(4)(D) addresses distributions from accounts referenced in Section 522(d)(12). Section 522(b)(4)(D)(i) provides that a distribution from a qualified retirement fund does not lose its exempt status under Section 522(d)(12) if the distribution is deposited into a similar fund or account within 60 days. As also previously mentioned at 4, supra, Nevada has opted out of the federal bankruptcy exemptions in favor of those provided under Nevada law. Unlike Section 522(b)(4)(D), there is no language in NRS 21.090(1)(r) extending the duration of the exempt status of a distribution from an individual retirement arrangement. Once an individual debtor obtains a discharge of his pre-bankruptcy debts, however, the importance of a continuous exemption is minimized by the presence of the discharge injunction.

Effective January 1, 2014, California adopted the Revised Uniform Limited Liability Company Act, see Cal.Corp.Code §§ 17701.01 through 17713.13, that includes provisions governing limited liability companies formed in another state. See Cal.Corp.Code §§ 17708.01 through 17708.09.

Not surprisingly, the Trustee does not oppose allowing the Debtor to claim an appropriate exemption under the wildcard. See Krohn Declaration at ¶ 16.